Rice *v.* Warren.

1. The failure of the plaintiff in *fi. fa.* to have a judgment obtained January 25, 1890, entered upon the general execution docket provided for by the act of October 1, 1889, presents no reason for rejecting the *fi. fa.* when offered in evidence upon the trial of a claim to property upon which the *fi. fa.* had been levied.

2. The owner of land upon which a third person erects improvements under a contract with a stranger to the legal title (the latter "as contractor" employing the third person), is not bound to disclose to such third person the fact of ownership, especially when the title of the owner appears of record and "the contractor" did not hold himself out as owner; and unless the person who erected the improvements was misled by the owner into the belief that the stranger was the real owner, the land cannot be subjected as the property of the stranger to the payment of the debt incurred in making the improvements, either as against the true owner, or one to whom he sold and conveyed the land before the debt for the improvements had been reduced to judgment.

3. When there was no evidence tending, either directly or by legitimate inference, to show that certain transfers of title were fraudu-

lent, it was error to charge the jury as to what their verdict should be in case they believed such transfers were fraudulent.

4. It not having been proved that the defendant in execution was ever in possession of the property levied upon, either before or after the date of the plaintiff's judgment, otherwise than " as contractor," and there being no evidence showing title in the defendant in execution, the verdict subjecting the property to the plaintiff's judgment was contrary to law and the evidence, and the court erred in not granting a new trial.

June 26, 1893.

Before Judge Wellborn. Habersham superior court. September term, 1892.

J. J. Bowden, for plaintiff in error.

No appearance contra.

Lumpkin, Justice.

The property levied upon was a house and lot in the town of Cornelia. It did not appear that J. C. Edwards, the defendant in execution, had ever been in actual possession of it. The lot in question was conveyed, February 21, 1884, by H. P. Kimsey to J. H. Derrick & Son; by the latter, May 11, 1887, to J. F. Edwards; and by him, January 3, 1888, to his daughter Emma E. Edwards, wife of J. C. Edwards. The deeds from Kimsey to Derrick & Son, and from the latter to J. F. Edwards, were both recorded August 4, 1887. The deed from J. F. Edwards to Mrs. Edwards was recorded July 27, 1891. She conveyed the property, June 3, 1889, to H. B. Rice, the claimant, and her deed to him was recorded July 27, 1891. It appeared from the testimony of Warren, the plaintiff in fi. fa., that J. C. Edwards, "as contractor," employed him, October 26, 1887, to build a house upon the lot, which he did. The execution was against James C. Edwards, " contractor." It does not appear precisely when the house was finished, but presumably it was early in the year 1888. While Warren was building the house, J. F. Edwards and his daughter lived in the town of Cornelia and knew the fact that the house was being built. Rice, the claimant,

at that time lived in Banks county. It will be seen from the foregoing statement that J. C. Edwards was never in any way connected with the legal title to the property, nor held himself out as such, and that J. F. Edwards conveyed the lot to his daughter at or about the time when the house built by Warren was finished. There was no evidence that J. F. Edwards, or his daughter, ever misled Warren into the belief that J. C. Edwards was the owner of the lot.

Warren sued J. C. Edwards for work done by the former in making the improvements, and pending the litigation which followed between these parties, Rice lived in the house on the lot and was aware of the litigation. He, however, obtained his deed from Mrs. Edwards several months before judgment was rendered in favor of Warren. There was not a particle of evidence to show that J. F. Edwards or Mrs. Edwards or Rice was guilty of any fraud whatever, or that the transfer of the title to Rice was made for the purpose of preventing Warren from getting payment for his work.

1. The act of October 1, 1889, "to provide when transfers and liens shall take effect as against third parties" (Acts of 1889, p. 106), contains nothing to prevent the introduction in evidence of a *fi. fa.* simply because the judgment upon which it was rendered has not been entered upon the general execution docket provided for by that act. The purpose of the act is to regulate the priority of deeds, mortgages, and other liens, and it has no bearing whatever upon the subject of proving their existence.

. 2. According to the testimony of Warren, already mentioned, J. C. Edwards, "as contractor," employed him to build the house in question. It is clear that Warren himself did not regard J. C. Edwards as the owner of the property, but seemed to believe he could subject the land to his claim for building the house

thereon under his employment by J. C. Edwards, "as contractor," but Warren did not make any attempt to set up a lien for work done by him against any person as the true owner. Having obtained a judgment against J. C. Edwards, he now seeks to subject thereto this house and lot as the property of the latter. Under the facts of this case, as above set forth, neither J. F. Edwards nor his daughter were under any obligation to disclose to Warren the real facts as to the ownership of the property. On the very day that Warren was employed to do the work, he could have ascertained by examining the record of deeds that the legal title to the property was then in J. F. Edwards. As has been seen, nothing was said or done by the latter or Mrs. Edwards to mislead Warren into the belief that J. C. Edwards owned the property; and therefore, no reason whatever appears for allowing him, as against either J. F. Edwards or his daughter, to subject this property as that of J. C. Edwards; nor has Warren any right to do this as against Rice, the claimant, who, according to the testimony, bought in perfect good faith, and nothing whatever appears to the contrary.

3, 4. The court, among other things, charged the jury as follows: "If you believe that the transfers of the title were fraudulent and intended to prevent plaintiff from getting pay for his improvements on the property, and that claimant was a party to such fraud, then the property would be subject." There being not a particle of evidence from which the jury were authorized to believe, or even to infer, that any fraud was committed by any of the parties, this charge was necessarily erroneous; and for reasons already made apparent, it is manfest that the verdict was contrary to both the law and the evidence, and ought to have been set aside.

*Judgment reversed.*