BELNAP v. CONDON et al.

No. 1945.   Decided August 4, 1908 (97 Pac. 111).

1.  MECHANICS' LIENS—RIGHT TO LIEN—CONSENT OF OWNER—AU-
THORITY OF VENDEE TO BIND VENDOR. Comp. Laws 1907, sec. 1372,.
provides that mechanics, materialmen, etc., shall have liens on.
the lands of the owner for which labor or material is furnished
or service is rendered, whether at the instance of the owner·
or of any other person acting by his authority or under him:
as agent, contractor, or otherwise. *Held*, that the interest of:
the vendor of land in possession of the vendee under contract
of sale was not subject to a materialman's lien for materials
furnished to the vendee for the construction of a  building
thereon,. unless the vendee had express or implied authority
from the vendor to bind her interest, or there was subsequent
ratification of the vendee's acts by such vendor.[1]

2.  SAME—AGENCY—EVIDENCE.  Where it is sought to charge a ven-
dor's interest in land with a materialman's lien for materials
furnished to the vendee to construct a building on the land,
the relation of principal and agent between the · vendor and
vendee may be shown by any parol agreement between them
from which the authority given by the vendor to the vendee to
improve the property may directly appear or be inferred.

3.  SAME—EXPECTATION—PERMISSION TO IMPROVE.  Mere expectation
by a vendor that the vendee in possession will make improve-
ments on the land, or mere permission to the vendee to make
improvements, or mere knowledge or acquiescence therein, is
insufficient to charge the vendor's interest with a lien for ma-
terials furnished the vendee to make such improvements, under·
Comp. Laws, 1907, sec. 1372, giving a lien for materials fur-
nished, whether at the instance of the owner, or of any other·
person acting by his authority or under him, as agent, con-
tractor, or otherwise.

4.  SAME—CHANGE OF ACCOUNT.  Where plaintiff furnished lumber
to a vendee of certain land, to be used thereon on the credit
of the vendee alone, plaintiff, upon informing himself as to
the true state of the title to the land, after having delivered
it to the vendee, could not change the account, charged on his
books to the vendee, so as to include the vendor therein, without
her consent.

---

[1] Morrow v. Merritt, 16 Utah 412, 52 Pac. 667.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Suit by Hyrum Belnap against Lizzie Condon and another. From a judgment for plaintiff against defendant F. W. Becker, and in favor of defendant Condon, plaintiff appeals.

AFFIRMED.

*J. D. Skeen* and *W. L. Maginnis* for appellant.

*J. H. Devine* and *Theo. Maloney* for respondents.

APPELLANT'S POINTS.

The authorities fully sustain the doctrine that where a contract of sale requires the vendee to make improvements on the land, the vendor thereby either constitutes the vendee his agent to make the improvements, or contracts that the fee simple title to the land may be bound by a mechanic's lien to pay for the improvements. (20 Am. & Eng. Ency. of Law, 322, 27 Cyc. 61, 34 Cent. Dig. 2171; Boisot on Mechanic's Liens, sec. 305; *Henderson v. Connelly,* 123 Ill. 98, 14 N. E. 1, 5 Am. St. 490; *Paulsen v. Manske,* 126 Ill. 72, 9 Am. St. 532; *Sheehy v. Fulton,* 38 Neb. 691, 41 Am. St. 769; *Shapleigh v. Hull* [Colo.], 41 Pac. 1108; *Hendrie, etc., Co. v. Holy Cross, etc., Co.* (Colo.), 68 Pac. 785; *Shearer v. Wilder* [Kan.], 43 Pac. 224; *Hill v. Gill* [Minn.], 42 N. W. 294, following *Henderson v. Connelly; Bohn Mfg. Co. v. Kountz* [Neb.], 46 N. W. 1123; *Guiou v. Ryckman* [Neb.], 110 N. W. 759; *Hickey v. Collom* [Minn.], 50 N. W. 918; *Allhene v. Tarbox,* 50 N. W. 1019, 48 Minn. 18.)

FRICK, J.

The appellant instituted this action to foreclose a mechanic's lien. In his complaint he in substance alleges that the respondents were indebted to him in the sum of $218.61 for a balance due for certain materials furnished by him to them at their special instance and request, to be used in the

construction of a certain building to be erected upon certain premises which are described in the complaint, and that said materials were furnished between the 29th day of August and the 26th day of October, 1904, and were used for the purposes aforesaid. These allegations are followed by the usual allegations in such cases with respect to the filing of a notice of intention to claim a lien upon the premises in question and with a prayer for foreclosure of the lien. The respondent Becker made no appearance in the action, and default was entered against him. The respondent Mrs. Lizzie Condon answered the complaint, in which she denied that she was indebted to plaintiff, or that she purchased or authorized the purchase of the material for the purposes aforesaid, or for any purpose, and alleged that she is, and prior to the alleged furnishing of said materials was, the owner of the premises described in the complaint; that she, prior to said time, had sold said premises to the respondent Becker, and had agreed to convey the same to him upon payment of the purchase price therefor; and that no part of the purchase price had been paid.

Upon a hearing the court found the facts to be substantially as follows: (1) That the respondent Mrs. Lizzie Condon was not indebted to the appellant in any sum. (2) That she was at all times mentioned in the complaint the owner in fee of the premises set forth in the complaint; that she at no time requested the appellant, or any one acting in his behalf, to furnish any material for the purposes of erecting a building upon the premises described in the complaint. (3) That on the 4th day of August, 1904, said Lizzie Condon entered into an agreement with the respondent Becker and wife, whereby she sold the premises described in the complaint to said Beckers, and upon the payment of the purchase price she agreed to convey the same to them by proper deed of conveyance. (4) That no part of the purchase price was paid upon said agreement. (5) That at and for a long time prior to the time that said material was furnished said Lizzie Condon was the owner in fee of said premises, and that during all of said time the deed evidencing the title in her was

of record in Weber county, Utah, where the land is situate.
(6) That appellant furnished lumber and material to re-
spondent Becker of the value of $281.61, but that no part
thereof was furnished or delivered to said Lizzie Condon, and
that she never promised to pay said Belnap, or any one for
him, for said lumber or material. There are further find-
ings, but it is not deemed necessary to mention them here.
Upon these findings the court made conclusions of law and
entered judgment against the respondent Becker for the
amount claimed by appellant, and in favor of respondent
Lizzie Condon, and awarded her costs.

The appellant now insists that the court erred in making
findings 1, 2 and 6 upon the ground that the evidence does
not support such findings, or any of them. The evidence
upon which these findings are based, briefly stated, shows that
some time in July, 1904, the respondent Becker and his wife
orally agreed to purchase the premises in question from the
respondent Lizzie Condon for the agreed price of $625. On
the 1st day of August following Lizzie Condon entered into
a written contract with said Becker and his wife, whereby
she agreed to convey said real estate to said Beckers upon the
payment of said sum of $625, $25 of which was to be paid
then, and the remainder on the 1st day of August, 1909,
with interest at 6 per cent. per annum. It further appears
from the evidence that the respondent Becker is a carpenter,
and at the time of the purchase told Mrs. Condon that he
wanted to build a shanty upon the property during the fall
of 1904, and that he intended to build a better house on it the
year following; that he said he had made arrangements with
a Mr. Scowcroft for the lumber to put up the shanty; that,
instead of getting lumber from Mr. Scowcroft, Becker in
July or August, 1904, bought the lumber and some other ma-
terial from the appellant; that Mrs. Condon did not know
anything about Becker's purchase of lumber until some time
in October following, when her attention was called to it by
appellant; that the lumber and material were charged to Mr.
Becker upon the books of appellant, but in October, when
appellant ascertained the true condition of the ownership of

the property and the contract of sale by Mrs. Condon to the Beckers, the account was changed upon the books so as to include Mrs. Condon. This change the appellant claims was made for the reason that Mrs. Condon, whom he went to see about the matter in the fall of 1904, told him that "if you will wait until the first of the year I will see that the whole thing is paid." This statement appellant claims was made by Mrs. Condon when he informed her that he thought he could hold her land for the material which he had sold to Mr. Becker for the building. Mrs. Condon denies that she made any such statement, but says that, when appellant claimed that he could hold the land, she told him that: "I will see about it, Mr. Belnap. I am very busy; . . . but I will let you know before the first of the year what I will do about it." After this, she says, she went to see her lawyer about the matter, and then phoned to Mr. Belnap and told him: "I found that he [appellant] could not take my land from me, and I refused to have any more bother about that lumber bill."

Mrs. Condon further testified on cross-examination, and, as appellant seems specially to rely upon this part of her testimony, we set it forth in full as the same appears in appellant's abstract, as follows: "Q. You were perfectly willing to part with this lot for five years, and not get a cent for it? A. Yes, sir; he said he would put up a little shanty and live in it this winter, and he said: 'I am tired of paying rent, and most anything will do for us rather than pay rent.' They were to pay interest. Q. In five years from now that lot may be worth considerable more money. Didn't you know that he intended to put a house on it? A. He told me that he had made arrangements with Mr. Scowcroft for some lumber to put a little shanty on it this fall, and said: 'Next summer I am going to build a better place on it.' Q. Is it not true that it was your idea that they would take that property and put a good house on it, and then you would make some money on it, even if they didn't pay for it, and that was one of the considerations for your selling it on those terms—that he would put a house on it? A. Why, certainly.

Q. So it is not at all probable that you would go to work and sell a bare lot of this kind, and take no pay on it, and no security, except the title to the lot itself, and agree to wait for five years for your pay, unless he would improve the lot? A. Well, I supposed of course, the man was able—was a carpenter, and would put up the building himself. Q. You wanted a building put up there? A. Yes, sir. Q. So, if he failed to carry out his contract, you would have some little chance of getting your money back? A. As I said, he said he had made arrangements with Scowcroft's for some lumber; and the first I knew he had gotten lumber from Mr. Belnap was when Belnap called at my house. I never went down to Belnap's in my life. I went up to see Becker after I let him have the money, to see if he had put the water in, along the 1st of August; and I saw the water was in, but that was all. The 1st of August was when this contract was signed, but he got the money the 19th of July. I gave him $5. He agreed to pay me $25 then. In place of paying the $25, he gave his note for it. I never saw any money."

Counsel for appellant contends, as we understand him, that upon this evidence the court should have found that the lumber and material were purchased for the building, if not upon an express, then upon an implied, request of Mrs. Condon, and that therefore her property should be held, if she is not personally liable. In support of this contention counsel cites numerous cases wherein it has been held that where an owner enters into a contract to sell real estate, wherein he requires the purchaser to make improvements upon the land sold, the land is subject to mechanics' liens, including the interest of the vendor. It is further contended that such is the result, whether the contract expressly requires the improvements to be made, or whether this arises by implication merely. Counsel therefore insists that the court erred in its findings and conclusions in favor of respondent Condon, and that the findings, conclusions, and judgment should have been in favor of appellant, and against both respondents. This claim is based upon section 1372, Comp. Laws Utah, 1907, which, so far

as material here, in substance provides that mechanics, materialmen, contractors, subcontractors, builders, and some others specially mentioned shall have liens upon the lands of the owner for which labor or material is furnished or services rendered, ''whether at the instance of the owner or of any other person acting by his authority or under him as agent, contractor, or otherwise.'' From the foregoing it would seem that the person who can bind the owner's land for the things for which a lien is given must in some way obtain his authority to do so from the owner. Without such authority, express or implied, in the first instance, or by subsequent ratification by the owner, the owner's property is not bound, although the improvements may benefit his land.

This court has in effect passed upon the question involved in this case. In the case of *Morrow v. Merritt*, 16 Utah 412, 52 Pac. 667, it was held that, under the section of the statute above referred to, material furnished at the request of a tenant of the owner does not bind the owner's interest in the land, although the tenant was by his contract of lease in writing obligated to make the improvements. Mr. Chief Justice Zane, at page 417 of 16 Utah, and page 669 of 52 Pac., speaking for the court, said:

"Doubtless statutes of other states may be found giving a lien upon the interest of the lessor of land without a contract with him or his agent, when material or labor is furnished to the tenant, and employed with his consent in erecting buildings or making improvements on the land. But, as we have seen, the Utah statute, upon which the plaintiff must rely, requires the materials to be furnished or the services to be rendered upon the request of the owner of the land, or his agent, before the lien can arise upon his interest."

It is thus held in that case that the landlord does not constitute the tenant his agent, so as to bind the landlord's interest in the land by requiring the tenant to make permanent improvements upon the leased premises. There are many decisions wherein it is held that, where the owner of land as lessor or vendor requires his lessee or vendee to make improvements, permanent or otherwise, upon the premises

demised or sold, this constitutes the lessee or vendee the
agent of the owner for the purpose of purchasing the material
or in procuring the labor in making the improvements, and
subjects the interest of the owner in the. premises to the
statutory lien.   The decision of this court above referred to,
however, directly holds that under such circumstances, as be-
tween lessor and lessee, the interest of the lessor is not .af-
fected by such an alleged lien.   Whether a different rule
should apply in case a vendor requires his vendee to make
improvements as part of the written contract of sale is not
involved in this case, as there is no claim that in the written
contract of sale in this case such a condition was imposed.
In the case of *Morrison, Merrill & Co. v. Clark,* 20 Utah 432,
59 Pac. 235, 77 Am. St. 924, the question was again before
this court in another form, and it. was there held that mere
knowledge by the owner that improvements are made upon
his land is insufficient to subject his interest therein to a
mechanic's lien.   The doctrine is, however, reaffirmed in the
last case mentioned that a mechanic's lien cannot be acquired
upon land unless the labor is done or materials are furnished
at the instance of the owner or of some person acting by his
authority.

It is, however, contended by appellant that it appears from
the testimony of Mrs. Condon that she expected that the
Beckers would build upon and improve the property, and
that hence the authority from her to bind her interest in the
property is implied.   In this connection it is also insisted
that the appellant is not limited by the terms of a written
agreement which may bind the parties to it only, but that he
may show any parol agreement between Mrs. Condon and
Mr. Becker from which the authority from her to him to
purchase material to improve the property may directly ap-
pear or be inferred.   This contention, in our judgment, is
sound.   The real question involved in such case is to estab-
lish the relation of principal and agent between the vendor
and purchaser.   If, therefore, the person furnishing ma-
terial which is purchased for the improvement of certain
property can show that the purchaser of the material was the

agent of the real owner of the property, the agency may be established in such a case, precisely as it may be in any other case. But the evidence in such a case must establish agency. Without this there can be no authority in the person purchasing the material to bind the owner of the property, who is the principal. This is well illustrated in the case of *Sheehy v. Fulton,* 38 Neb. 691, 57 N. W. 395, 41 Am. St. 767, a case upon which appellant strongly relies. The principle stated above is illustrated and applied in that case. The mere expectation by the owner and vendor of the land that the purchaser will make improvements upon it and in that way enhance its value is not sufficient to establish the relation of principal and agent between the vendor and vendee. Nor do we think that mere permission by the vendor to the vendee to make improvements would be sufficient, and certainly mere knowledge or acquiescence on the part of the owner is not sufficient under our statute. In the case last above cited, at page 696, of 38 Neb., and page 396 of 57 N. W. (41 Am. St. Rep. 767), in referring to the subject-matter now under consideration, the Supreme Court of Nebraska uses the following language:

"When one sells land to another, and places that other in possession, in the absence of any restrictive covenants, there is always an implied license that the vendee may make improvements on the land. The expression of direct authority to do so, independent of other circumstances, would not charge the vendor's estate."

It requires no argument to establish the soundness of the principle enunciated in the foregoing statement. No doubt, when one purchases land of any kind, he has at least the implied power to improve it in his own way. If he does so upon his own responsibility, it is not easy to perceive how, in the absence of an express statute, he thereby binds the owner of the title for the value of the improvements. Nor do we think it changes the rule if the owner either expresses his assent to the making of the improvements or permits them to be made without objection. In either case the necessary authority required by our statute in the vendee

from the vendor to bind the vendor's interest in the property is lacking. If, therefore, we construe Mrs. Condon's testimony in this regard most strongly against her, it amounts to no more than a strong expectation on her part that Becker would make some improvements upon the property in question. At any rate, it goes no further than an expressed permission upon her part that he might do so. This falls far short of the requirement of our statute as construed by this court.

Nor can the appellant recover upon the claim that Mrs. Condon ratified the acts of Mr. Becker in purchasing the materials. She denies that she made the statement attributed to her by appellant. The trial court found against appellant on this point, and it was for that court to say who told the truth in that respect. It is clear, however, that the lumber was sold upon the credit of Mr. Becker alone. He alone was charged with the account, and no change therein was made until appellant informed himself of the true state of the title. He could not at that time change the account, so as to include Mrs. Condon, without her consent. If he did not want to trust Becker, he should have looked into the matter sooner, and consulted Mrs. Condon before he furnished the lumber to Becker, and in failing to do so he cannot now complain. We need not pause to review the numerous cases cited by appellant's counsel. It must suffice to say that the decisions in all of them are based upon written contracts between lessors and lessees, or vendors and vendees, wherein it was expressly provided that the lessees or vendees should make certain stipulated improvements upon the premises leased or sold. Many of the cases are also based upon statutes much broader than our own.

We are of the opinion that the court committed no error in rendering judgment in favor of respondent Lizzie Condon, and the judgment, therefore, should be, and accordingly is, affirmed, with costs to her.

McCARTY, C. J., and STRAUP, J., concur.