PAUL MAHNKE, Appellee, v. MARKEN ACRES COMPANY, Appellee, et al., Appellant.

**VENDOR AND PURCHASER:** Sale (?) or Agency(?)   A contract
1  wherein first party agrees to institute a selling campaign for land belonging to second party, and to pay second party a stated sum for the land at a stated time, out of which sum second party agrees to discharge existing mortgages, constitutes a sale by second party to first party, and not a contract of agency.

**MECHANICS' LIENS:** Interest of Unpaid Vendor of Land.   The
2  interest which one has in land (sold prior to the furnishing and erection of improvements thereon) because of the unpaid purchase price is not subject to a mechanics' lien for such improvements.

**MECHANICS' LIENS:** Stranger to Title Bound by Estoppel.   Prin-
3  ciple recognized that a stranger to the title to land may become personally liable for the value of improvements placed thereon, provided he so conducts himself that the one improving has a right to rely, and does rely, on him for payment.   Evidence held to show affirmatively that no such reliance was had.

**MECHANICS' LIENS:** Holding Non-Contracting Party.   One who
4  contracts with a conditional vendee of land, and in sole reliance on such vendee for payment, may not later change the account and hold the vendor personally liable.

PRINCIPAL AND AGENT:. Personal Trust Relation.  Principle recognized that a trust committed to an agent is presumed to be exclusively personal, and cannot be delegated.

*Appeal from Tama District Court.*—JAMES W. WILLETT, Judge.

NOVEMBER 11, 1919.

THE defendant J. H. Marken alone appeals.  His complaint is that it was error to give plaintiff a mechanics' lien upon such interest as defendant had as a vendor, and error to render judgment against appellant personally.— *Reversed.*

*Struble & Stiger,* for appellant.

*James H. Willett,* for appellee.

SALINGER, J.—I. Plaintiff alleges, for one thing, that he improved the property of defendant Marken Acres Company by furnishing material and labor; that said company is comprised of the defendants J. H. Marken and R. E. Glass; that he is entitled to recover as prayed against defendant J. H. Marken, because Marken was, when said contract was made, and ever since, the owner in fee simple of the real estate which was improved by plaintiff.

1. VENDOR AND PURCHASER: sale (?) or agency (?)

The allegation that Marken was owner, as alleged, is highly important.  Is it proved?  It is undisputed that Marken and Glass made written contract concerning these premises.  That contract recites that Marken is the owner of the lands in question; that Glass agrees and undertakes that he will forthwith proceed in the conduct of a selling campaign, to dispose of the land in city lots and acreage tracts as may be deemed best to all concerned; that he agrees to pay Marken $80,000.  It is contracted that, out of this sum, Marken shall provide for the payment of the mort-

gage indebtedness. Glass undertakes to have contracts of disposal entered into by purchasers on or before November 15, 1915, and to pay said $80,000 to Marken on or before January 1, 1916. There is provision that all claims for crop damage and for the rights of tenants on the north side of the tract shall be adjusted by Glass, and that Marken shall retain all crops on the south 80 acres. There is further provision that, as evidence of good faith, Glass will deliver certain certificates, to be held by Marken in trust, and to be turned back to Glass when he completes this contract and pays said $80,000. Later, a modification was agreed upon. It makes no change, except that, instead of $80,000 to be paid Marken, the sum shall be $71,000; that, instead of being obligated to pay the mortgage indebtedness, whatever it might be, in consideration of said reduction, Marken was bound to pay not more than the face of the mortgage, and interest up to May 11, 1915,—and in further consideration of receiving $71,000 instead of $80,000, Glass agreed to pay 50 per cent of all sums above $80,000 realized from selling, and Marken agreed to pay all taxes payable on October 1, 1915. Some of the things found in this amendment to contract are found in an amendment to contract considered in *Gutierrez del Arroyo v. Graham*, 227 U. S. 181. In it, the amendment to the contract of sale read:

"On the 27th day of April, 1908, the contracting parties make addition to the 3rd clause of this contract in the sense that the excess of price which Mr. Graham may obtain from the $55.00 *per cuerda* shall be divided between him and Mr. Arroyo at 50 per cent each."

The court held:

"There is no suggestion of agency in it, but, on the contrary, an assumption that Graham is acting on his own behalf."

Mere nomenclature—the designation given to the trans-

action by the parties to it—is not at all controlling.   *Ar-buckle v. Kirkpatrick,* 98 Tenn. 221.   The form of the con-tract may have weight, but is not at all conclusive.   The real intention of the parties, rather than an artful and wordy cover of the real purpose, is the test.   1 Mechem on Agency (2d Ed.), Section 46.   Doubtful cases are to be de-termined, not by the name which the parties have seen fit to apply to their contract, but by its true nature and ef-fect.   1 Mechem on Agency (2d Ed.), Section 48.   It is a sale if it appears from the whole agreement, whatever name is given it, that the parties intend title shall pass from one to the other.   31 Cyc. 1199, 1203, 1204, 1205;   *Alger v. Keith,* 105 Fed. 105.   The essence of sale is the transfer of title, for a price paid or to be paid.   He who becomes a debtor for the purchase price, and is not merely liable for the pro-ceeds of a resale, is a buyer, and not an agent.   It is an agency if the property remains in the principal, and the agent is liable, not to pay a price, but to account for the pro-ceeds of the property when sold.   31 Cyc. 1198.   In agency, the principal remains owner of the property, has the right to control its sale, and to fix the price and terms.   He may re-ceive the proceeds from the sale of the property, less the agent's commission, and he has no right to a price, unless the agent first sell.   1 Mechem on Agency (2d Ed.), Sec-tion 48.   In a sale, title passes to the buyer.   In agency, title remains in the principal although possession be trans-ferred to the agent.   31 Cyc. 1198.   If the seller is to have a fixed price, regardless of market fluctuations, that is strong evidence of sale, rather than agency.   1 Mechem on Agency (2d Ed.), Section 46.

On all these tests, Marken had parted with title; and the allegation that he was owner in fee simple is unproved, and conclusively disproved.   All the amplifications of the test rules so hold.   In *May v. Brackett,* 159 Iowa 101, at

104, we held that the contract was not one of sale. But the contract was this:

"The substance was that Reynolds undertook to survey and plat the tract at his own expense, and to offer the lots for sale, as before indicated. The contracts of sale, if any, were to be performed by defendant, and the proceeds were to be paid to him. * * * It did not, however, bind Reynolds to any performance."

An agreement named "special selling factor appointment" is still a contract of sale, transferring title to the goods, where the consignee is required to pay for the goods within 60 days, whether sold or not, at an amount fixed in advance, with certain allowances for carting, storing, and insuring and selling, whether the goods are carted, stored, insured, or sold, or not, and there is no requirement that the consignee make any account of sales or keep the proceeds separate, and where he is given all the advantage and risk of the advancement or decline of proceeds. *Arbuckle v. Kirkpatrick*, 98 Tenn. 221. An agreement of agency under which defendant was to sell the goods of plaintiff during the season of 1891, with provision that defendant "does hereby order" certain goods of plaintiff at prices named, subject to a stated discount, payable in four months after May 1, 1891, with promise by defendant to give a note when requested, is, notwithstanding its other undertakings, a contract of purchase. Whatever terms may be used in describing a writing, general provisions that the consignee shall, on receipt of the goods, or at some stated time or times thereafter, pay for all the goods received, whether sold or not, and that he may sell to whom he will, at what price and on what terms he will, are characteristic of a contract of sale. 31 Cyc. 1201. Where a paper is signed by both parties, and there is provision that the property shall be paid for in cash, and that a mortgage shall be executed, and that the "contract" shall be recorded, and the parties

recognize the agreement as a contract imposing obligations upon both parties, and not as merely a promise made by one, there is no suggestion of agency, even though, as an afterthought, the thing is termed an option. *Gutierrez del Arroyo v. Graham*, 227 U. S. 183. A contract to "rent" a machine for a certain whole sum, payable at the expiration of 15 months, with interest after maturity, the title to the machine until payment to remain in the lessor, and the lessor to have the right of retaking on default of payment, is a sale. *Singer Mfg. Co. v. Cole*, 4 Lea (Tenn.) 439 (40 Am. Rep. 20). To like effect is *Cowan v. Singer Mfg. Co.*, 92 Tenn. 376 (21 S. W. 663). The case of *Robinson v. Easton*, 93 Cal. 80, 84 (28 Pac. 796, at 797), approves the following from *In re Nevill*, L. R. 6 Ch. App. 397:

"If the consignee is at liberty, according to the contract, * * * to sell at any price he likes, and receive payment at any time he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price and a fixed time, * * * then, whatever the parties may think, their relation is not that of principal and agent. The contract of sale which the alleged agent makes with his purchasers is not a contract made on account of his principal, for he is to pay a price which may be different, and at a time which may be different from those fixed by the contract."

In *Alpha C. Co. v. Bradley & Co.*, 105 Iowa 537, we held that, where a contract by a manufacturer appoints a specified person as general western agent for the exclusive sale of goods, and provides that he is to pay a specified amount in cash, subject to a discount if payment be made within 30 days, there is a contract of sale, and not of agency. In *Ansley R. Co. v. Pope*, 105 Tex. 440 (151 S. W. 525), it is ruled that, where the owners contracted, giving another party exclusive sale of land for 90 days, with agreement to deed any or all of it to any person to whom the

others might sell, and that, if any land remained after said time, the others should buy the same for themselves, and the others were bound, at all events, to take all of the land if they did not sell it, and both parties being entitled to specific performance, such contract was one for the sale of land, and not for a mere agency. If it appears that possession of property has been transferred, but a naked title reserved, merely to secure payment of the price, the contract is a sale, although it may in the agreement be called an agency. 31 Cyc. 1201.

Cases wherein the evidence of sale was much less strong than is here present have declared the transaction in them to be a sale. Some already analyzed demonstrate this. So does *Heryford v. Davis,* 102 U. S. 235; *Norwegian Plow Co. v. Clark,* 102 Iowa 31; and *Reeves v. McCracken,* 103 Tex. 416 (128 S. W. 895). The execution of a land option contract or a title bond has been held to be a sale. *Alger v. Keith,* 105 Fed. 105; 31 Cyc. 1203. In *Keene v. Demelman,* 172 Mass. 17 (51 N. E. 188), it is held that, where an option on lots obtained by a real estate broker contains an agreement that the lots were to be transferred to either the grantee or his assigns, on payment of consideration, there is, on the face of the contract, what creates the relation of possible vendor and vendee, rather than that of principal and agent.

Appellee places reliance on cases which hold that, where an owner makes a contract with a tenant that permanent improvements shall be made, he is liable for such improvements, because there was such a

**2. MECHANICS' LIENS: interest of unpaid vendor of land.** contract, and it included provision that the permanent improvements should revert to the landlord at the termination of the lease.

Of this class are *Denniston v. Brown,* 183 Iowa 398; *Moore v. Jackson,* 49 Cal. 109; *Stevenson v. Woodward,* 3 Cal. App. 754 (86 Pac. 990); *Shaw v. Young,* 87 Me. 271 (32

Atl. 897); *Ward v. Nolde,* 259 Mo. 285 (168 S. W. 596). And see note to *Belnap v. Condon,* (Utah) 23 L. R. A. (N. S.) at page 615. They are not relevant.

It follows that whatever support the decree would have if plaintiff had proved his allegation that Marken was the owner of the land, such support is lacking, and that such interest as Marken had left was not subject to plaintiff's lien.

II. We are not overlooking allegations of the petition to the effect that the work of the plaintiff benefited Marken and the defendant company by enhancing the value of the property in question, and that Marken ac-

**3. MECHANICS' LIENS: stranger to title bound by estoppel.**

quiesced. The sufficiency of the petition was not challenged. We have, then, merely the question of what is a fair construction of these allegations, and whether, so construing them, the plaintiff has established them by a preponderance. It is true that a stranger to the title may so conduct himself as to become liable for a benefit to the owner of lands. To that point we shall speak later. We are of opinion that it is not the theory of the plaintiff that Marken, though a stranger to the title, has estopped himself to deny liability for this betterment. It is a fair interpretation of the pleadings that Marken is charged because he acquiesced in the betterment, while owning the property bettered. Appellee's citing *Weber v. Weatherby,* 34 Md. 656, and *Blake v. Pitcher,* 46 Md. 453, indicates that this is his position. These cases hold that, where certain material was furnished to one holding under contract of sale, and, with the full knowledge of the *owner,* was put into the construction of a building, the materials must be considered to have been furnished upon the authority of the owner, within the meaning of the statute, as the latter, by his conduct, accepted the agency of the vendee. What plaintiff really invokes is the elementary rule that a con-

sent which binds the owner may be proved by acts and declarations of the *owner*, as well as by direct evidence. See *Nellis v. Bellinger*, 6 Hun (N. Y.) 560. Under that rule, the consent by the owner may be established by showing knowledge and absence of objection. *Husted v. Mathes*, 77 N. Y. 388; *Hellwig v. Blumenberg*, 55 Hun 605 (7 N. Y. Supp. 746); *Ehrhardt Bros. D. Co. v. Columbia Candy Co.*, (St. Louis Court of Appeals) 186 S. W. 1113. The rule is well stated in *Donaldson v. Holmes*, 23 Ill. 85, which declares that the holder of the legal title should not be permitted to stand back and see a contract made and performed on his property, and then be allowed to set up his title to defend against the lien of a mechanic, though he has given no notice of the true state of the title. But, to apply this rule, there must be evidence in some form that the acquiescence worked a consent on part of an *owner*. All claim on that rule falls if the alleged consent was given by a stranger to the title. A stranger to the title cannot subject it to a mechanic's lien, although he is the father-in-law of the owner, if the owner in no wise misleads the person who furnishes the labor and materials. *Rice v. Warren*, 91 Ga. 759.

The naked fact that a stranger to the title feels an interest in seeing the property sell well, and makes no objection, though he knew improvements were being placed upon the property, will not sustain either personal judgment or any lien against the property. Neither will the naked fact that a conditional vendor believed or expected that what he saw would better the property. And this is so even under a statute which sustains liens for what is furnished at the instance of the owner or of "any other person acting by his authority or under him as agent." *Belnap v. Condon*, 34 Utah 213 (97 Pac. 111).

The allegation that a title holder gave consent gives plaintiff nothing.

III.   But there is a basis upon which a stranger to a title might be held liable to the mechanic.  And we will concede, for the sake of argument, that plaintiff invokes the rule governing in such a case.  But the stranger is liable only because of an estoppel.  His liability rests upon the principle that one who misleads another to his prejudice, by remaining silent when he ought to speak the truth, ought not to be permitted to speak it after the other cannot save himself.  But Marken may not be held liable for having induced the plaintiff, by silence and conduct, to do this work, unless what Marken did and omitted to do misled the plaintiff into believing that Marken had agreed to pay him or see him paid.  Nothing done or not done by Marken will serve the plaintiff, unless thereby he was induced to contract.  The continuing of the work is not involved.  If plaintiff made his contract, relying upon someone other than Marken, he was under obligation to complete the contract; and it is of no consequence that something done or omitted by Marken induced plaintiff to continue; for, in so continuing, he but performed a contract obligation which he had knowingly assumed towards someone other than Marken.  Nor is that rule involved under which the true owner is held liable because he concealed his ownership and induced the laborer to contract with a third person by leading the laborer to believe that such third person was the owner.  *Rice v. Warren,* 91 Ga. 759.  There is no claim that Marken concealed an ownership from plaintiff.  On the contrary, Marken disclaims ownership.  And there is no evidence that he induced plaintiff to believe that the party with whom plaintiff contracted was the owner.  For that matter, that party was the owner.  The exact question, then, is whether, at the time when plaintiff made his contract, something done or omitted on part of Marken gave plaintiff a right to look to Marken for payment.  In resolving that question, it is, of course, of

controlling importance to determine from the evidence what understanding plaintiff had as to whom he was contracting with when he did contract. Marken cannot be said to have misled plaintiff into reliance upon Marken if plaintiff did not take Marken into consideration when contract was made. Grant acquiescence—did it induce the contract?

The record demonstrates that no reliance was had on anything Marken did or failed to do; that no act or omission on part of Marken led plaintiff to believe he was dealing with Marken, or into beginning work in reliance that Marken was to pay. The petition alleges that plaintiff entered into contract with Marken Acres Company, through its agent, one Bryant. It is asserted by plaintiff that Bryant was "one of the general managers of the Acres Company," and conceded that, "as such," he made "the verbal agreement" under which plaintiff claims. Plaintiff admits he contracted with said company through Bryant, and that he had no agreement with Marken "relative to doing this work." In the affidavit for the lien, plaintiff states he made the contract with the Acres Company. He alleged that, since he filed his lien, the company has made him a partial payment of $100, in extinguishment of the account against said company. He charged to the company the several contract items as they were completed. But later, he posted that account as subsisting against defendant Marken. He testifies: "Yes, I did at first look to Bryant for my pay. Of course, he was the agent;" that witness posted the account to Marken because Bryant advised him that Marken was interested in the company, and not until then. This occurred in his examination:

"Q. You didn't turn to Marken for payment until you failed to get your pay from Bryant or the company, did you? A. Yes."

He adds that, in posting up his books, he added the

**4. MECHANICS'
LIENS: holding
non-contract-
ing party.**

name of Marken; that he had not intended to charge the latter, but made up his mind to do so, when he found that Marken had the deed; that he charged the account to Marken "simply to get the man who had the deed to the place." It was not until after Bryant had made the statement to him that Marken was interested in the company that he claims to have had any understanding that he was working on property belonging to Marken. His position is well illustrated by his testimony that he considered the company would hold the owner, whoever he was; that he (plaintiff) had never lost a dollar yet, "because the owner is considered to take care of it if nobody—even if the tenant or anybody else doesn't." There is no case of reliance here. There is simply an afterthought precaution,—an ex-parte arrangement,—providing the plaintiff with collateral security if the party with whom he had contracted should fail to pay. It does not bind Marken. In 2 Corpus Juris 837, note under title "Agency," it is held that, on the question as to whom credit was given, it is, if unexplained, most material and controlling to whom plaintiff charges the work on his books, and to whom he makes out his bill. In *Miller v. Hollingsworth*, 36 Iowa 163, at 165, importance is attached, in making the estate of the wife liable, to the fact that it does not appear the sale was made to the husband "in reliance upon his credit alone." The holding of *Bartlett v. Mahlum*, 88 Iowa 329, is of considerable significance at this point. It is there held that, where the owner of a lot contracted with H for the erection of a house on the lot, and plaintiff furnished materials therefor, and charged them to H, and filed a claim for a lien based upon an agreement with H as the principal contractor, he could not afterwards claim that he furnished them under a contract with the owner of the lot made prior to his agreement with H, and therefore entitled to a lien as principal contractor. One furnishing materials for a building to a conditional

vendee to whom it is charged cannot, upon ascertaining the true state of the title, change the account so as to bind the interest of the vendor without his consent. *Belnap v. Condon,* 34 Utah 213 (97 Pac. 111).

The witness Zak gives some testimony which is slight evidence that Marken acted somewhat inconsistently with his claim that he had parted with full control. Be that as it may, this bases no estoppel against Marken, because there is no claim that plaintiff knew, even after he had contracted, that what Zak testifies to had occurred. If what Zak testified to were sufficient to create an estoppel, had the plaintiff acted in reliance, of course it works no estoppel where plaintiff could not have been induced to act thereby because he was not aware of its existence.

In the last analysis, it would seem to be the theory of the plaintiff that Bryant was the agent of Marken, and that, even if Bryant lacked original authority to bind Marken, that was supplied by the acquiescence of Marken.

5. PRINCIPAL AND AGENT: personal trust relation.

It may be true that, because the land was advertised in Marken's name, and he was frequently about the place, watched the progress of the work, and commented upon the same, it was natural for plaintiff to believe the statements of Bryant, to the effect that Marken was a member of the company. But that changes neither the fact that plaintiff confessedly made his contract with the company, and understood he was making it with the company at the time when he made it, nor change the law that no declaration made by Bryant to the plaintiff could make Bryant the agent of the defendant Marken. Even if it be assumed that the Acres Company was the agent of Marken, and that the company attempted to delegate that agency to Bryant, the answer is that making the company an agent gave no authority to create a substitute agent whose acts would be binding upon the prin-

cipal of the Acres Company. 1 Mechem on Agency (2d
Ed.), Section 311. In Section 306, the text is:

"It is the general rule of the law  *  *  *  the trust
committed to the agent is presumed to be exclusively per-
sonal and cannot be delegated by him to another so as to
affect the rights of the principal."

*Webster City S. Rad. Co. v. Chamberlain,* 137 Iowa 717,
cited by appellee, has nothing in favor of appellee. It mere-
ly holds that a tenant who constructs an improvement for
his own use and benefit, with the knowledge and consent of
the owner of the property, is the owner, within the mean-
ing of the mechanics' lien law. This may warrant subject-
ing the property of the Acres Company to a lien for a bet-
terment placed upon the property by one of its tenants, but
it certainly is no justification for attaching a lien to the
vendor's rights of Marken—much less for entering personal
judgment against him. So of *Janes v. Osborne,* 108 Iowa
409. There, the owner of land contracted with another to
sell it. The purchaser agreed to pay part of the price on
delivery of the deeds, and to secure the balance by a mort-
gage, to be junior to another mortgage to be placed on the
land by the purchaser for the purpose of securing funds
with which to pay for improvements which he agreed to
make. The purchaser did not make the first payment nor
negotiate said mortgage, but with the consent of the vendor
made said improvements. We held that the vendor was not
entitled to priority for the amount of the purchase price
which was to have been, and was not, paid in cash, over a
mechanics' lien for the erection of said improvement by the
purchaser. This is put upon the ground that the contract
itself shows the vendor did not intend to reserve any lien
for such amount, but expressly gave the cost of the house
priority to his claim for purchase money. The ultimate
holding is that the persons who furnished the materials and
labor in erecting the house were entitled to a lien on the

*premises* to an amount not exceeding the $1,500 for which said mortgage was to be given.

### 3-a

No case cited, and none we have been able to find, sustains the giving of a lien on Marken's interest, or the entry of personal judgment against him. Those cited by the appellee group into the following classes: (1) Where the person who contracted for the betterment had a lienable interest, and the owner of the full title contended that his property should not be subjected to any lien. Of that class is *Estabrook v. Riley*, 81 Iowa 479, and *Willverding v. Offineer*, 87 Iowa 475. (2) Where the true owner held the one who contracted out to be the true owner. *Bartlett v. Mahlum*, 88 Iowa 329, at 330; *Miller v. Hollingsworth*, 36 Iowa 163; *Frank v. Hollands*, 81 Iowa 164, at 169. (3) Where the one who made the contract could be found to be the agent of the owner of the property. *Willverding v. Offineer*, supra. But even in these cases, nothing was subjected except the buildings in some and the premises in others, and no personal judgment was rendered against the owner. All that *Mineah v. Stotts*, 130 Iowa 530, holds, is that the property owner who contracts with a builder to furnish labor and material at reasonable prices for making certain improvements constitutes the builder his agent, whose contracts for labor and material are binding on the owner.

Appellee urges that the court had the advantage of seeing and hearing the witnesses and observing their conduct, and his fact determination should be given the proper weight in this court. He cites *Ross v. Ross*, 148 Iowa 729, 736. We agree with that decision that, in that case, this opportunity of the trial judge should be given "some effect." But the effect in the case now before us is utterly negligible, for we are but determining questions of law, upon evidence which is not in conflict.

The decree will stand reversed. The district court is

directed to proceed, in harmony with this opinion, to enter judgment in favor of appellant J. H. Marken, and to relieve his interest in the property in question from any lien of the plaintiff.—*Reversed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.