*W. V. Custer,* for plaintiff in error. *L. M. Rambo,* contra.

---

## PEABODY *et al. v.* FLETCHER.

1. Under the facts of this case the party who by the express terms of the written instrument was made the agent of the borrower continued throughout the transaction, which resulted in the loan of large sums of money, to be the agent of the borrower; and there was nothing in the transactions between the lender and this party so appointed agent of the borrower to annul or modify that contract and convert the party referred to as the agent of the borrower into an agent of the lender.

(a) The ruling here made in no way violates the general principle, that agency is a question of fact and may be established by proof of circumstances, apparent relations, and the conduct of the parties.

2. Where the owner of a number of lots of land conveyed them all to another person for the purpose of enabling the latter to secure a loan thereon, and the consideration of the deed covering the land was expressed to be one dollar and the agreement upon the part of the grantee to pay off $50,000 of indebtedness, and the further agreement upon the part of the grantee to ultimately release and convey to the grantor, free and clear of encumbrances, certain specified lots embraced in the entire tract conveyed, the provision that said lots shall ultimately be reconveyed by the grantee to the prior owner in no way limits or affects the right of a lender who advanced money to the grantee in this deed, or to his agent on the faith of this security, to

proceed against the entire property at once, upon default by the bor-. rower in making payments according to the terms of the loan.

3. Where the evidences of the loan thus made were in the character of bonds which were a lien upon the property referred to, and these bonds were in the hands of various holders for value, the trustee for the bondholders might, either with his own money or with money borrowed, pay off a prior encumbrance upon the land, so as to protect the interest of the bondholders, and have the same transferred to himself; and such payment and transfer would not extinguish the prior indebtedness, but, if not itself paid in accordance with the terms thereof, could be enforced by foreclosure or other appropriate procedure.

No. 1813. SEPTEMBER 17, 1920. REHEARING DENIED SEPTEMBER 28, 1920.

Injunction. Before Judge Eve. Tift superior court. October 25, 1919.

Thomas Y. Fletcher brought his equitable petition against George F. Paulk, L. P. Skeen, Frank Scarboro, South Georgia Land Corporation, Augustus S. Peabody individually and as trustee, James L. Houghteling Jr., Francis R. Dickinson, Peabody, Houghteling & Co., and others. In the petition it is alleged, among other facts, that in April, 1910, petitioner was the owner and was in possession of a certain tract of land consisting of a number of specified lots, among them lots Nos. 15 and 43. These two lots, in named districts and counties in this State, will be specially referred to hereinafter. The entire tract of land contains some 2,550 acres. On the 18th of April, 1910, petitioner executed and delivered to George M. Forman a deed to secure an indebtedness of $35,000, which fell due on the 18th day of April, 1920. After the execution and delivery of this deed petitioner remained in possession of the property. On the first day of January, 1916, there was still due of this indebtedness $33,000 principal. In addition to the indebtedness due Forman, petitioner owed other debts, amounting approximately to $12,000, a portion of which was in judgment, and the payment of a portion of which had been guaranteed by George F. Paulk, one of the defendants. During the spring of 1916 it was agreed between petitioner and Paulk that the former should transfer and convey to the latter the land above referred to, except lots Nos. 15 and 43, and that in consideration of this Paulk should pay off and discharge all of the indebtedness which petitioner at that time owed, including the Forman loan. Paulk informed petitioner that it would be necessary for him to borrow money with which to discharge the indebtedness, and that

it would be impossible for him to secure sufficient funds to discharge it upon 1670 acres of land, which it had been agreed that petitioner would sell to Paulk; and Paulk then suggested to petitioner that the latter should convey the entire 2,550 acres, and that, this property being used as security, a loan sufficient to pay off all petitioner's indebtedness be procured; that the said Paulk would then reconvey to petitioner lots 15 and 43 referred to above, and would undertake and obligate himself to discharge the entire amount of the loans to be secured, so that petitioner would eventually hold said lots 15 and 43 clear of all encumbrances, and would in addition thereto, as a consideration for the 1670 acres, secure the satisfaction of all his outstanding indebtedness. For the purpose of carrying out this agreement petitioner, in the spring of 1916, executed and delivered to Paulk a warranty deed conveying all of the lands hereinbefore referred to, the deed reciting a consideration of "one dollar, and the agreement upon the part of Paulk to pay off $50,000 of indebtedness, including the Forman loan, and the further agreement upon the part of Paulk to ultimately release and convey to petitioner, free and clear of encumbrances, lots of land Nos. 15 and 43." Said deed further recited that petitioner should retain possession of lots 15 and 43, and he did retain possession of them, Paulk never asserting any claim or right of possession of said lots. It is alleged that during the year 1916 Frank Scarboro, one of the defendants, was the agent of Peabody, Houghteling & Co., composed of Augustus S. Peabody, James R. Houghteling Jr., and Francis R. Dickinson. Scarboro conducted his business in the name of Frank Scarboro Company, and is hereinafter referred to, sometimes as Frank Scarboro Company and sometimes as Scarboro.

On some day prior to the 2d day of October, 1916, Paulk applied to Scarboro for the loan of $50,000 upon 2,550 acres of land, and this application was submitted by Scarboro to Peabody, Houghteling & Co., and they agreed to make a loan of $50,000 upon the security aforesaid in consideration of Paulk paying to them 7 per cent. of the amount of said loan as commission. This commission was divided between Scarboro and Peabody, Houghteling & Co. During the year of 1916 L. P. Skeen, one of the defendants, was engaged in the practice of law in Tifton, Tift county; and it is alleged that he was the attorney and agent of Peabody, Houghteling

& Co., and did make an examination of the records of the lands in Irwin and Turner counties in reference to the various lots of land making up the tract of 2,550 acres; that Peabody, Houghteling & Co., when they agreed to make the loan, had notice of the existence of the security deed to George M. Forman, and it was contemplated that a part of the money loaned upon the application hereinbefore referred to was to be used to pay off the Forman loan. It is also alleged that a deed dated October 2, 1916, purporting to convey to Paulk absolutely the 2,550 acres of land, was forged by Scarboro. The petition then recites the fact of the making of the loan to Paulk upon the execution of a deed by him to Peabody as trustee, and that in receiving this money Scarboro and Skeen acted as the agents of Peabody, Houghteling & Co., and the check for the $50,000, the amount of the loan, was payable to Paulk, Scarboro, and Skeen, and by endorsement of Skeen and Paulk the control was passed to Scarboro, who, the petitioner alleges, was the agent of Peabody, Houghteling. & Co. Scarboro absconded, having converted the money to his own use and without paying off the debts which he was to pay off with the amount of the loan. It is alleged that although the indebtedness secured by the deed from Paulk to Peabody as trustee, dated October 2, 1916, is not due, and Paulk is not in default, Peabody as trustee and Peabody, Houghteling & Co. have employed counsel to institute proceedings to foreclose the loan, as well as the Forman loan, and their counsel have given notice of their intention to proceed. Petitioner prays injunction to restrain Peabody and Peabody, Houghteling & Co. and their agents from collecting or attempting to collect the amount claimed to be due on the Forman loan, and from asserting or attempting to assert any claim of lien on lots of land Nos. 15 and 43, above referred to, and from subjecting or attempting to subject the two lots of land to the payment of the debts secured; praying that the deed from Paulk to Peabody be cancelled so far as relates to these two lots, and, if for any reason the deed should not be cancelled so far as those two lots are concerned, that Peabody, Houghteling & Co. be compelled by order and decree of court to proceed first against the other property described in the deed and to exhaust the same before subjecting the lots last referred to to the payment of the indebtedness secured by their deed.

The defendants, Augustus S. Peabody and Peabody, Houghteling & Co., demurred to this petition, and also filed their plea and answer, which it is not necessary to set forth here in full; but they denied that Scarboro or Skeen was their agent or attorney, and insisted that Scarboro was the agent of Paulk and that Skeen was employed as his agent and attorney. They alleged that the bonds, the payment of which was secured by a trustee's deed to Augustus S. Peabody, were in the hands of various innocent purchasers; and that, in paying off and taking a transfer of the security deed to Forman, Peabody had acted in good faith, as he was bound by his duties as trustee to act, to secure the holders of the bonds. Numerous other allegations were made, which it is not necessary to set forth, as those which are material will be indicated in the opinion filed in the case.

At the interlocutory hearing the judge granted the injunction prayed. Augustus S. Peabody, James L. Houghteling Jr., and Francis R. Dickinson, as individuals and as trustees, and other parties named as plaintiffs in error excepted.

*Atwood, Pease & Loucks* and *R. D. Smith,* for plaintiffs in error.
*E. K. Wilcox* and *Quincey & Rice,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The controlling question in this case is as to whether the Frank Scarboro Company was the agent of Peabody, Houghteling & Co. or of George Paulk.

From the sworn petition of the defendant in error it appears that the petitioner had conveyed to Paulk, on March 1, 1916, 2,550 acres of land, consisting of several lots, the deed reciting a consideration of one dollar, and an agreement upon the part of Paulk to pay off $50,000 indebtedness due and owing by petitioner, including the Forman loan, and a further agreement upon the part of Paulk to " ultimately release and convey to Fletcher, free and clear of encumbrances, lots 15 and 43 ; " these two latter lots being embraced in the tract of 2,550 acres. Paulk in reference to this testified: " I told him to convey title to me to get that loan. He was to convey title to me for the purpose of getting that loan, and he did it. He gave me the deed I have mentioned. The 2,550 acres of land. It was the intention that he should convey the title to the whole 2,550 acres of land to me to get the loan. Then after I put the loan on, I was to convey back

15 and 43 to him. I did not convey lots 15 and 43 back to him until after the $50,000 had been put on the property. It was not the intention I should do so until after that." · The deed of March·1, 1916, was never put on record, but a deed purporting to be executed by Fletcher to Paulk on October 2, 1916, conveying the tract of 2,550 acres, was claimed by Fletcher to have been a forgery; and there was some evidence to this effect. But the uncontroverted evidence as to the deed of March 1, 1916, executed upon the terms which we have stated above, shows that the deed conveying the 2,550 acres of land was executed and delivered. Under the terms of this deed the title to the land was placed in Paulk effectually for the purpose of borrowing the sum of $50,000. Subsequently, on the 17th day of June, 1916, Paulk executed an instrument creating the Frank Scarboro Company his agent to procure a loan for him of $50,000. This instrument, omitting the formal parts, reads as follows:

"Know all men by these presents, that I do hereby make, constitute, and appoint Frank Scarboro Company, of Tifton, Georgia, my exclusive agents, for a period of 60 days from the date hereof, to procure for me a loan of $50,000, to run for a period of 10 years, and to bear interest at the rate of 6 per cent. to be payable semi-annually from the date of such loan, and the principal to be liquidated in installments as follows: [Not necessary here to state these installments.]

"Such loan to be secured by deed to secure debt on 2,550 acres of farm land which I own and which is located in Irwin & Turner County, Georgia.

"As compensation for the services in procuring such loan I agree and bind myself to pay Frank Scarboro Company, at the time such loan is obtained, a commission of seven per cent thereof, which commission or compensation shall be in full of all expense to me in connection therewith, and the said Frank Scarboro Company are expressly authorized to deduct such commissions from the amount of the loan so procured.

"And I do further agree and hereby authorize the said Frank Scarboro Company to receive for me such loan, and pay off for me out of the proceeds thereof all liens, judgments, taxes, or other encumbrances on or against said property, and the balance of the loan over to me.

" In witness whereof, I have hereunto set my hand and seal, this 17th day of June, 1916.                    George F. Paulk."

By the execution of this paper Paulk unquestionably created Frank Scarboro, who did business under the name of Frank Scarboro Company, his agent to procure a loan in the amount named. It was delivered to Scarboro at the same time that the application for a loan was delivered, and as a part of the transaction, and the loan was made upon this application made by Paulk, who had by the instrument quoted made Scarboro his agent. From the statement of facts in the case of *Merck* v. *American Freehold Land Mtg. Co.,* 79 *Ga.* 213 (7 S. E. 265), it appears that Merck, of Gainesville, Ga., desired a loan, and delivered to Lattner, who resided in Gainesville, a written application, describing the security offered and giving other information in answer to questions. He also signed an agreement addressed to Nelson & Barker, containing the following provisions: " I hereby constitute you my agents, and request and authorize you as such to negotiate for me a loan of four hundred dollars on five years' time, with interest at eight per cent. per annum, payable annually at such place as you may name. . . I further agree to pay you for negotiating said loan a commission of eighty dollars, to be paid at the time of the closing of the loan. . . If you succeed in negotiating this loan, I hereby authorize you to send the money draft or check . . to my agent, R. P. Lattner, of Gainesville, Georgia, and to make draft or check payable to his order." These papers were sent by Lattner to Nelson & Barker, of Atlanta, who forwarded the application to the Corbin Banking Co., of New York City. They submitted the application to one Sherwood, who was the representative of the American Freehold Land Mortgage Company. Sherwood accepted the loan and delivered four hundred dollars to Corbin Banking Co., which they forwarded to Nelson & Barker, first deducting the amount agreed to be paid to them for their services in procuring the loan. Nelson & Barker sent to Lattner a check on the Corbin Banking Company, and he in turn gave to Merck a check on a bank in Gainesville for $320. $80, or twenty per cent. of the loan, was charged and deducted before payment to Merck. Of this the Corbin Banking Company received ten per cent., Nelson & Barker six per cent., and Lattner four per cent. In this suit brought to recover the face amount of the notes, four hundred dollars, Merck

contended that the eighty dollars deducted was usurious, and contended that the intermediaries who deducted the commissions were agents of the lender. At page 230 the court says:

"It is insisted that these middlemen, all of them, should be treated as agents of the lender. Implications of agency are easily overstrained, misapplied, or otherwise abused. Here an express agency was created in behalf of the borrower, and the proof is plenary that the lender had no agent engaged in this transaction but Sherwood. It matters not how many agents appear on the scene, if the lender has none or only one. If he holds control of his capital and decides for himself when he will part with it, and on what terms, and has no terms but lawful interest and good security, and satisfies himself that the security is good, he transacts his own business and is not to be judged by the law of agency. And if, doing none of these things in person, he commits them to a single agent, employed by him at his own expense, and this agent alone represents him, the principal and his agent are one, and the case is to be treated just as if the agent were the principal. Here, according to the evidence, and all the evidence, Sherwood was the agent and the sole agent of the lender. True, the notes and the deed were not delivered to him directly out of the hand of the borrower; true, he did not inspect the property or examine the title to see for himself whether the loan was secure; true, he did not deliver his bond to reconvey on payment of the debt, out of his own hand to the borrower in person, nor out of his own hand pay to him the money loaned; but deeds, bonds, and promissory notes may be delivered to the absent and transmitted to any distance; money paid to any one accredited to receive it is well paid; and he who is satisfied with another's inspection of property or examination of titles does not render that other his agent by forbearing to inspect or examine for himself. Nelson & Barker doubtless secure confidence in the inspections and examinations which they make, procure or adopt, by demonstrating that they are worthy of confidence. Sherwood does not the less judge of the security by basing his judgment on the representation or opinion of whomsoever commands his confidence. No doubt he would be willing to trust the borrower's inspection and examination, if they were trustworthy and he knew it or believed it. Inspections and examinations which come with the indorsement of Nelson & Barker may in

his opinion be more reliable than if they were made by himself. It is obvious that the success of such business as Nelson & Barker were engaged in must be staked on accuracy and reliability. But grant that the middlemen were by legal implication agents of both parties, the lender as well as the borrower, for several purposes, such as receiving and delivering papers, inspecting the property, examining the title, etc., it is certain, according to the evidence in the record, that they were not agents express or implied for making the loan, fixing the terms of it or accepting the security. Nor did they in fact do these things, but they were done by Sherwood. Now, unless some one who represented the lender in making the contract took or contracted to take, for himself or the lender or some other person, something from the borrower over and above a legal rate of interest, how could the contract, under our code, be usurious? It seems to us legally impossible that it could be. By using intermediaries as channels of transmission for papers, relying upon their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agents to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown."

Under the ruling in the *Merck* case and the facts of this case, Scarboro was the agent of the borrower, Paulk. Counsel for defendant in error in their brief have earnestly urged that the question of agency is one of fact; that an agency may be established by circumstances as well as by direct evidence; that it may arise by implication as well as by express agreement; and that in transactions of the kind involved here the borrower may go behind the written application or power of attorney and show that in truth and in fact he was the agent of the lender. They cite section 3569 of the Civil Code, which declares that "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." And they also restate the principle laid down in several decisions by this and other courts, that the fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. It is not necessary for us to restate the rule made in these various cases cited, nor to re-

view them. It is true that the question of agency is a question of fact, and where there are conflicts in the evidence it is a question for the jury. But in none of the cases decided by our court is there any conflict with the ruling in the *Merck* case which we have quoted from at length, and the several decisions reaffirming that rule. The case in hand is the case of agency created by express agreement, and the fact that agency continued to exist, unless it was revoked or changed by some subsequent agreement or act upon the part of the plaintiffs in error; and we find no evidence of any such subsequent agreement or act upon the part of the lenders in this case. The fact that they sent the money to Scarboro in the form of a check payable to Paulk, Frank Scarboro Company, and Skeen, does not take this case out of the rule. Nor do the facts that Peabody, Houghteling & Co. did not send out notice of the maturity of principal and interest, but that these notices were sent and signed by Scarboro, that Scarboro collected payments of the interest, as well as payments in curtailment of the principal, and that the borrower did not remit directly to the Chicago office, nor other similar and kindred facts enumerated by the defendant in error, have the effect of converting Scarboro into an agent of Peabody, Houghteling & Co.

Counsel for defendant in error insist that though it be conceded that at the outset Scarboro was the agent of Paulk to procure the loan, yet under the circumstances and the law applicable to the case Peabody, Houghteling & Co. made him their agent for the purpose of receiving and disbursing the proceeds of the loan; being their agent for that purpose the money in his hand is their money, and the loss occasioned by his theft is their loss. We do not think this last fact, upon which special emphasis is laid by counsel for defendant in error, converted Scarboro into an agent of Peabody, Houghteling & Co. In the written agreement creating the relation of principal and agent between Paulk and Scarboro it is stipulated that Paulk does " hereby authorize the said Frank Scarboro Company to receive for me such loan, and pay off for me out of the proceeds thereof all liens, judgments, taxes, or other encumbrances on or against said property, and the balance of the loan over to me." That the facts relied upon here to show that the relationship of agency existed between Scarboro and Peabody, Houghteling & Co., and not between Paulk and Scarboro, do not have the

effect ascribed to them by counsel for the defendant in error, has
been substantially ruled more than once in this court. See the
case of *Merck* above cited (*79 Ga.* 213) and the cases following
the decision in that case. Under the principle ruled in that and
other cases L. P. Skeen was not the attorney of the lenders, but
was the attorney for the agent of the borrower. And it is un-
necessary to discuss the proposition insisted upon by counsel for
plaintiffs in error, that even if Skeen was the attorney of Peabody,
Houghteling & Co. it could make no difference in the case, be-
cause he had endorsed the $50,000 check and turned it over to
Frank Scarboro, and it was Frank Scarboro, the agent of the bor-
rower, who finally received the money. This proposition seems
to be sound; because, even if Skeen had been the agent of Peabody,
Houghteling & Co., and the .check had been made payable to him
alone, when he turned it over to Scarboro, the agent of Paulk, then
Paulk's liability accrued.

The fact that in the instrument creating Scarboro the agent to
procure a loan for Paulk it is stipulated that Scarboro was to be
his agent " for a period of 60 days," and that  the loan was con-
summated after the expiration of 60 days from the date of this in-
strument, makes no difference, inasmuch as the negotiations for
the loan were begun within the period specified and carried on to
a successful conclusion, and the money was actually paid over to
Paulk's agent named in the instrument creating the agency. Time
was in no wise of the essence of this contract.

2. Conceding that there was evidence authorizing the court
below to find that the deed of October 2, 1916, purporting to con-
vey all the lands in question to Paulk, was a forgery, nevertheless
the deed of March 1, 1916, vested the title in Paulk for the pur-
pose of securing the loan actually made. It matters not that it
is stipulated that lots Nos. 15 and 43 were to be "ultimately"
reconveyed to Fletcher. This expression, construed in connection
with the remainder of the deed and viewed in the light of the
entire instrument, can, so far as it affects the rights of the lenders,
only mean that these two lots were to be conveyed after the claim
of the lenders was satisfied, and did not impose upon the lenders
the necessity of devising some means whereby the lots mentioned
should be treated differently from the other lots in the tract be-
fore the loan was actually paid; and the expression quoted should

not be given a meaning which would require the lenders to first exhaust the other security before proceeding against the entire tract. And the occupation of the two lots of land by Fletcher was not notice of any claim of right in the two lots that was inconsistent with the deed which he had executed to Paulk. The possession of land by a grantor in a deed is supposed to be consistent with the deed. *Malette* v. *Wright,* 120 *Ga.* 735 (48 S. E. 229).

3. The purchase by Augustus S. Peabody of the security deed to Forman and the transfer of it to himself did not have the effect of extinguishing the lien of that instrument. Indeed, when his position as trustee of the bondholders was considered, it might well be contended that his payment of the money secured by that instrument would have subrogated him to the right of the prior holder, even if he had not taken a transfer.

Under the view we take of this case, it is not necessary to decide the necessity of making the bondholders parties in order to entitle the plaintiff to have the relief sought.

It follows from what we have said above that the court erred in granting the injunction.

<div align="center">

*Judgment reversed. All the Justices concur.*