## GEORGIA STATE SAVINGS ASSOCIATION *et al. v.* WILSON.

No. 12949.   SEPTEMBER 14, 1939.   REHEARING DENIED OCTOBER 13, 1939.

*Anderson, Cann & Dunn, J. B. Moore,* and *Heath & Heath,* for plaintiffs in error.

*Robert Asa Sapp, John Rogers,* and *Newt Gaskins,* contra.

GRICE, Justice. This was a contest between the plaintiff Wilson, a materialman, and the defendants Georgia State Savings Association, the holder of a security deed, and V. E. Love, the owner and grantor in that deed. The material was furnished to Love from July 7 to December 3, 1937. The Savings Association parted with the money on October 7, 1937. Wilson's lien was recorded on October 23. The judge in his charge to the jury in effect directed a verdict against the Savings Association, to which timely exceptions were taken by both the Savings Association and Love, as well as to the refusal to sustain a demurrer to the petition. A motion for new trial was made by both the defendants, the special grounds of which are indicated in the headnotes. It was overruled, to which ruling exceptions were taken, as well as to the refusal to sustain a demurrer to the petition.

It is insisted by defendant in error that notice of his unrecorded claim was brought home to Heath, and that Heath was the agent of plaintiff in error. In *Merck* v. *American Freehold Land Mortgage Co., 79 Ga.* 213 (7 S. E. 265), the borrower signed an application constituting certain persons his agents to negotiate a loan. The loan was obtained, the borrower delivering his note for $400. The lender actually parted with $400, sending it, as instructed by the borrower, to his agents who deducted 20 per cent. thereof as the charges which the borrower had agreed to pay them for obtaining the loan. When suit was brought to foreclose, the borrower pleaded usury, taking the position that the middlemen were not his

agents, but those of the lender. This court held that by using intermediaries as channels of transmission for papers, relying on their inspection of property and examination of titles, made at the borrower's instance, and forwarding the money through them also at his instance, the lender does not constitute them his agents to make the loan, and is not chargeable with the consequences of dealings between them and the borrower, whether those dealings be public or private, known or unknown. In *Peabody* v. *Fletcher*, 150 *Ga.* 468 (104 S. E. 448), there was an instrument which by its terms constituted Frank Scarboro Company the agent of Paulk to procure a loan. It also contained a provision authorizing Frank Scarboro Company to receive the loan for Paulk, and to pay out of the proceeds thereof all liens, judgments, taxes, or other encumbrances on the property, the balance to be paid over to Paulk. The controlling question was whether Frank Scarboro Company was the agent of the lenders or of the borrower. It was insisted that Frank Scarboro Company was the agent of the lenders, because it was shown that the money was sent in checks payable jointly to Paulk, Frank Scarboro Company, and Skeen, an attorney; that the lenders did not send out the notices of the maturity of the principal and interest coupons, but that Frank Scarboro Company did, and also collected the installments of interest. It was further insisted that though it be conceded that at the outset Scarboro was the agent of Paulk to procure the loan, yet the lenders made Scarboro their agent for the purpose of receiving and disbursing the proceeds of the loan. This contention was examined by this court, and the result reached was that the facts relied upon did not have the effect of changing the relationship of Frank Scarboro Company from that of agent of the borrower to that of agent for the lenders.

The application for the loan in this case contained a provision expressly appointing Heath the borrower's agent, authorizing him to do and perform "acts necessary to be done and performed towards the procuring of said loan." Is this case differentiated in principle from the *Merck* and *Peabody* cases, supra, by reason of the contents of the letter from the Georgia State Savings Association to Heath, dated October 7, and particularly the following language therein: "You will also require Mr. Love to satisfy you that he has paid all bills for labor and material used in construction of building recently erected on lot mortgaged to this association, or

to furnish you with a memorandum of all outstanding amounts, so that you may see that they are paid from proceeds of our check"? In C. J. S., Agency, § 24(c), it is said that it frequently happens that the agent of one party to a transaction is appointed by the adverse party as his agent for certain purposes, in which case each party is principal, but only as to such matter as he intrusts to the agent. It has been held that where the intermediary is authorized or required by the lender to retain all or a portion of the loan and to pay off encumbrances, he is the agent of the lender, but otherwise if the borrower is responsible for the retention by the intermediary. The part of the application for a loan by Love to the Georgia State Savings Association which had reference to the agency of Heath was in the following language: "For the purpose of negotiating for and procuring a loan on the property described herein, I have appointed Chas. W. Heath as my agent; and he is hereby authorized, as my agent, to do and perform acts necessary to be done and performed towards the procuring of said loan." It makes Heath Love's agent to do and perform acts necessary to be done towards procuring the loan. True, we find here no reference to bills for labor and material. In a communication from the savings association to Love on August 19, it agreed to make him the loan on certain specified conditions. One of these was that he show title to the property free of all liens or encumbrances. Nor is there any direct statement that he must pay for the material used in the house. When the association sent to Heath the check payable to Love, representing the loan, it was not stated that the check would be delivered to Love only on condition that Love did certain other things; but it contains the statements: "You will also require Mr. Love to satisfy you that he has paid all bills for labor and material. . . You will then require Mr. Love to have the enclosed abstract brought down to date. . . And you will also require Mr. Love to receipt for the loan." This letter did not direct Heath himself to pay out of the proceeds of the check any unpaid claims of laborers or materialmen. The check was not payable to Heath. We are of the opinion that the facts of this case bring it within the ruling of the two cases last cited, and that Heath was the agent of the borrower, and not the lender; and hence any notice that may have come to him of the unrecorded claims of the materialmen can not affect the lender's rights.

It is next contended that, independently of the fact that such notice was traced to Heath as would bind the association, there is other evidence in the record which demanded a finding that the association had notice. The insistence is that it was in possession of certain facts which obligated it to pursue the inquiry, which, if they had been followed up, would have disclosed to it that Wilson was furnishing materials for the improvement of the real estate afterwards conveyed by its security deed. Counsel invoke the principle appearing in the Code, § 37-116. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Counsel point to certain portions of the testimony, which they say sustain their contention, to wit: the application of the borrower before the loan was made, in which he stated that he wanted the money to erect improvements by day labor on a vacant lot; the testimony of Burdette, that after the building had been commenced, McCluskey, the lender's inspector of loans, told the witness, who was the foreman or supervisor of the work, to see to it that all bills were paid. McCluskey swore that he had not the slightest knowledge as to who was furnishing the materials, nor did he know that there were liens outstanding or claims of liens on this particular job. His testimony to this effect was not disputed.

In *Picklesimer* v. *Smith,* supra, there was a contest between Picklesimer, a materialman, and Smith, the holder of a security deed. At the time of its execution, it appeared that all the materialmen who had contracts with the owner had commenced to furnish labor or material to Burke, the owner, for the improvement of the lot, and had practically completed their contracts. Smith had actual knowledge that Burke was erecting the improvements with day labor. The case was tried before an auditor, who found in favor of Smith. The judge approved the finding. The court expressly recognized the principle that if Smith at the time he took his security deed knew that the materialman was furnishing material to Burke for the improvement of this real estate, or if the evidence within his knowledge was sufficient to put him on inquiry, and such inquiry would have led to knowledge of Burke's claim, then the materialman's lien when created and established as

required by the Code would take priority over the title acquired under this deed. Yet, notwithstanding the fact that Smith knew that Burke was erecting the improvements with day labor, this court refused to hold that the evidence demanded a finding that Smith had actual notice of the materialman's claim, and said: "After a careful examination of the evidence in this record, we are not prepared to hold that a finding was demanded upon this issue against Smith. There was evidence which would have authorized a finding against Smith. There was likewise evidence to authorize a finding in his favor on this issue." In the instant case it is pointed out by counsel that the holder of the security deed knew that the owner was erecting the improvements with day labor, and this was enough to bring home notice to it that the owner would have to buy materials, and if this inquiry had been pursued it would have led to knowledge of this materialman's claim. There is no evidence, however, to show that the holder of the security deed knew or ought to have known that the owner expected to buy the materials on credit. The borrower indicated to the lender, in his application for the loan of $2000, that the estimated cost of the building was $3500, and that he owned other real estate of the value of $7500, with only an $800 encumbrance thereon, and possessed $1000 in cash and postal savings, as well as other property, the whole totaling $12,500. With this information before it, the lender association could well have concluded that the borrower would use other funds with which to pay for a part or all of the materials. Mere knowledge that the building is to be erected with day labor is not sufficient to charge the grantee in a security deed with knowledge that building materials are being bought on credit. In the *Picklesimer* case there was a direct conflict in the evidence on the question whether the holder of the security deed knew that the owner would buy the materials on credit. We conclude that there was no evidence to show notice.

It is next contended by counsel for Wilson that the lender association expressly or impliedly consented to the improvements being made on the Love property, and thereby subjected the lien of its prior recorded security deed to the lien of the materialman, for the reason that the association authorized the improvements and was active and instrumental in having the real estate improved. The case of *Williams* v. *Brewlon,* 170 *Ga.* 164 (152 S. E. 441), is re-

lied on. It was there ruled: "Where the owner of land conveys it to another by warranty deed, and simultaneously takes from the purchaser a deed to secure the purchase-money, in which security deed the vendor in the deed first mentioned agrees that the vendee-purchaser shall have the right to place a permanent loan on the land conveyed and on a house to be erected thereon, not to exceed sixty per cent. of the appraised value of said house and lot, and further agrees that said vendee shall have the right to place a pay-roll loan on said lot not to exceed $1500, the owner of the lot (vendor in the first deed) in these circumstances consents to the improvement of the real estate by the purchaser, thus impliedly authorizes it, thus co-operates with the purchaser in its improvement, and is active and instrumental in having the real estate improved; and in such circumstances the liens of laborers for work done, and of materialmen for material furnished, in the improvement of the real estate, are superior to the vendor's claim for the purchase-money secured by the deed of the purchaser." Two Justices dissented. In that case there was a clause in the security deed which recognized the right of the owner to place on said lot a pay-roll loan "not to exceed $1500," and also to place a permanent loan thereon not to exceed 60 per cent. of the value of the improvements to be erected thereon. The holding of the majority was that under these circumstances the owner of the lot impliedly authorizes the improvement; and having in effect consented to the improvements being made, the liens of laborers for work done and of materialmen for the material furnished will attach to the property, and become superior to the vendor's claim for the purchase-money secured by the deed of the purchaser. Here we are not confronted with an instance where an owner sells a parcel of real estate and writes into his deed a consent that a permanent loan be placed thereon, a house be erected thereon, and a pay-roll loan be placed thereon. The association here did know of the purpose of Love to improve the premises. It was furnished a copy of the plans and specifications. It inspected the work as it progressed, but under its contract with Love it was not to furnish him the money until a building of a certain type was completed; and it must be inferred that the object of having it inspected was to learn whether the contemplated improvements were of the kind specified in the contract between Love and the association. There was this kind of co-operation between vendor

and vendee in the plans for improvements; but we see nothing in this to give superiority to an unrecorded claim of the materialman. Mere knowledge that improvements are to be made will not subject the title of the true owner to a lien for material. He must expressly or impliedly consent "to the contract under which the improvements are made." *Reppard* v. *Morrison,* 120 *Ga.* 28 (47 S. E. 554) ; *Williams* v. *Brewton,* supra.

The great weight of authority seems to be in accord with this view. See the authorities cited in the notes to the reports of the following cases: Belnap *v.* Condon, 34 Utah, 213 (97 Pac. 111, 23 L. R. A. (N. S.) 601) ; Roxbury Painting & Decorating Co. *v.* Nute, 233 Mass. 112 (123 N. E. 391, 4 A. L. R. 680) ; Fine *v.* Dyke, 175 Ark. 672 (300 S. W. 375, 58 A. L. R. 907). The majority opinion in *Williams* v. *Brewton,* supra, contains the following: "When, however, the vendor has in some way consented to the improvement of real estate by his vendee, or has expressly or impliedly authorized it, *or has co-operated with the vendee in plans for the improvements, or has been active and instrumental in having the improvements made,* such liens will attach to his property. 40 C. J. 111 (§ 111) cc." (Italics ours.) By reference to the citation in Corpus Juris it will be seen that the above quotation is preceded by the sentence, "according to some authorities," and the notes thereto cite but one decision in support of the first of the two above sentences, one of which we have italicized, and but one in support of the second. Although the holder of the security deed has co-operated with the grantor therein in plans for the improvements, or even if he has been active and instrumental in having the improvements made, we believe the sounder rule to be that some definite and affirmative act on his part, communicated to the materialman and by the latter acted upon, is necessary before the rights of the holder of the security deed will be affected, in the absence of an antecedent unrecorded lien of the materialman, or actual notice on the part of such holder of the unrecorded materialman's lien at the time of the execution and record of the deed. The part of the ruling of the majority in the *Williams* case expressed in the third headnote will not be extended. The record is silent as to any act on the part of the savings association that could have led Wilson to believe that it consented to his selling the material to Love on credit. There was no estoppel. Compare *Rice* v. *Warren,* 91 *Ga.*

759, 762 (17 S. E. 1032). We apprehend that many vacant lots are sold, with a part payment down, a deed to the purchaser executed, and a security deed to the vendor for the balance of the purchase-price, when the vendor knows that a dwelling is to be erected thereon. It is not uncommon to specify in the deed the character and minimum cost of the contemplated building. In such case it could be said that the vendor authorized the purchaser to make improvements thereon; but this is not enough to place the claim of a materialman above the rights of the holder of the security deed. The association by the conduct of none of its officers or agents has done anything to postpone its rights under its security deed to those of the claims of the materialman. The case on its merits, so far as the association is concerned, must be decided in favor of the association upon application of the principle that where title to real estate is conveyed by a duly recorded deed to secure debt, and the grantee takes the deed and advances the money loaned without knowledge or notice of a materialman's lien, and before its record, the title thus acquired is superior to such lien. *Bennett Lumber Co.* v. *Martin,* supra; *Milner* v. *Wellhouse,* supra; *Picklesimer* v. *Smith,* supra; *Dwight* v. *Acme Lumber & Supply Co.,* supra; *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 *Ga.* 787, 792. No reason appears why a new trial should be granted to Love.

Other questions were presented by this record, but they are subsidiary to the rulings above, and need not be dealt with.

*Judgment reversed as to Georgia State Savings Association, and affirmed as to Love. All the Justices concur.*