MALETTE *v.* WRIGHT *et al.,* executors.

1. When a case had been referred to an auditor, to whose report exceptions of fact had been filed, and the parties agreed that the jury should not pass upon each exception of fact, but that all matters of fact should be submitted as a whole to the jury to decide either for the plaintiff or the defendant, the evidence to be used before the jury being the evidence filed by the auditor, it was not error for the judge to submit all the issues without first approving the exceptions of fact.
2. Possession of land remaining with a grantor and never surrendered will be deemed to be held under the grantee. Such possession will be construed as consistent with the grantor's recorded deed, and is not notice to an innocent purchaser from the grantee of any mistake in the deed whereby a larger tract was inadvertently conveyed than the parties to the deed intended.
3. The words in the descriptive clause of a deed, "being the same land owned and occupied by me," occurring immediately after the description of the land by metes and bounds, did not create any ambiguity in the deed.

Argued June 23,—Decided July 14, 1904.

Complaint for land. Before Judge Mitchell. Thomas superior court. December 8, 1903.

*M. Baum* and *Ross & Grace,* for plaintiff.

*Hammond & Hammond,* for defendants.

EVANS, J. Anna S. Malette brought an action of ejectment against Bryan H. Wright and Anton P. Wright, as executors of Arthur P. Wright, to recover seventy-five acres off the north portion of lot of land number 63 in the 13th district of Thomas county. The abstract of title relied on was: A security deed dated August 1, 1890, from Susan F. Underwood (common grantor of the parties) to the Georgia Loan and Trust Company, conveying

three hundred acres of land, including the tract of seventy-five acres above mentioned; deed from that company to Susan F. Underwood, dated October 30, 1893, covering the same land and made for the purposes of levy and sale; and a deed from the sheriff of Thomas county, dated December 5, 1893, to Anna S. Malette, covering the three hundred acres conveyed by the security deed first above referred to.    The defendants filed an answer in which they admitted their possession but in which they denied the plaintiff's title.    By an amendment, which was allowed, they set up the following defense:    The testator of the defendants, in order to carry out an agreement between him and Susan F. Underwood, whereby he was to convey to her 225 acres of land of the eastern portion of lot of land number 63 in the 13th district of Thomas county, made to her a deed which was intended to convey said 225 acres; but, by mistake of the scrivener, and against the intention and understanding of the parties, the conveyance was erroneously so drawn as to include 75 acres of land on the north side of lot number 63, the tract of land in dispute. Immediately upon discovery of the mistake, to wit, on September 13, 1890, Susan F. Underwood executed to defendants' testator a deed of conveyance to this 75-acre tract.    A short time prior to the execution of this last conveyance, the said Susan F. Underwood, intending and desiring to secure, by way of renewal, a debt she then owed the Georgia Loan and Trust Company, conveyed to that company her farm, consisting of the 225 acres, also embracing, by mistake, in her deed to the company the 75-acre tract, which formed no part of her farm but had for many years been the property of defendants' testator, who had the open, notorious, bona fide, and peaceable possession thereof.    The mistake thus made was common and mutual to both of the parties to the deed.    The Georgia Loan and Trust Company subsequently transferred its claim against Susan F. Underwood to the plaintiff, Anna S. Malette, who, notwithstanding she had perfect notice and knowledge of said mistake, obtained judgment against Susan F. Underwood upon a note to secure which said conveyance was made, caused execution to issue and to be levied upon the entire 300 acres described in that deed, and brought the property to sale at sheriff's sale.    The Georgia Loan and Trust Company had, long prior to the execution of said security deed, loaned to Susan

F. Underwood the principal sum of their claim against her, and in 1885 took a mortgage on the 225 acres of land owned by her, knowing at the time that the 225-acre tract composed her farm.

The case was referred to an auditor, to whose report certain exceptions of law and of fact were filed by the defendants.    When the case came on to be tried in the superior court, both parties agreed that the jury should not pass upon each separate count of the exceptions of fact, but that all matters of fact should be submitted as a whole to the jury, to decide either for the plaintiff or the defendants, the evidence to be used before the jury being the evidence filed by the auditor in the case.    The jury returned a verdict in favor of the defendants; and a motion for a new trial was made by the plaintiff, to the overruling of which she excepted and brought the case here for review.

1. Aside from the general grounds of the motion that the verdict was contrary to law and to the evidence, etc., there is a special assignment of error to the effect that the judge erred in submitting all the exceptions of fact to the jury without first approving them.    The submission of the issues raised by the exceptions of fact amounted to an approval of them.    Section 4596 of the Civil Code simply provides for the submission of such issues to the jury in equitable proceedings, raised by exceptions of fact to an auditor's report, where the judge approves the exceptions. The statute does not require any formal judgment of approval of the exceptions of fact; and when the judge submits to the jury the issue raised by an exception, the submission of the issue thus made is the equivalent of an approval.    At best, the failure of the judge to formally approve the exceptions of fact before submitting the case to the jury was a mere harmless irregularity.    *Russell* v. *Mohr-Weil Lumber Co.*, 115 *Ga.* 35 (1), 36.    Besides, there was an agreement between counsel that a general verdict for the plaintiff or the defendant might be returned by the jury, and the case was tried on the entire evidence heard by the auditor and contained in his report, and the verdict was general in its terms.    This consent practically disregarded the auditor's report and the exceptions thereto.

2, 3. Another exception is to the charge of the court; and a reference to the evidence is necessary for its discussion.    The plaintiff introduced the following evidence:    A deed from Susan

F. Underwood to the Georgia Loan and Trust Company, dated August 1, 1890, conveying one farm consisting of the eastern portion of lot No. 63 in the 13th district of Thomas county, commencing at the northeast corner of said lot, thence west 881 yards, thence 490 yards to the gully down the branch to the original south line of said lot, thence east to the southeast corner, thence north to the starting point, said farm containing 300 acres, and being the same land owned and occupied by the grantor. This deed was given to secure a note for $600, as provided by §§ 1969, 1970 and 1971 of the Code of 1882. Also, a deed from the Georgia Loan and Trust Company to Susan F. Underwood, dated October 30, 1883, and conveying the same land. This deed was filed and recorded in the office of the clerk of the superior court of Thomas county for the purpose of levy and sale, as provided by statute. Also, the note above mentioned, with entry of transfer to plaintiff, and a fi. fa. from Thomas superior court, October term, 1893, in favor of Anna S. Malette, who was the transferee of the Georgia Loan and Trust Company, against Susan F. Underwood, for $600, principal, besides interest, attorney's fees, and costs, with special lien on the land described in the preceding deeds. The fi. fa. contained an entry of levy by the sheriff on the same land, dated October 31, 1893, and was introduced in evidence together with a deed from Doss, sheriff of Thomas county, to Anna S. Malette, conveying the same land upon a consideration of $500. This deed was dated December 5, 1893, and recited that the land was sold under the above-described fi. fa. It was admitted that A. P. Wright, the defendants' testator, had title to the land described in his deed to Susan F. Underwood at the time of its execution.

The defendants introduced the following testimony: J. H. Underwood testified: I went on the land about 1881, occupied it two years, and then sold to Dan Luke. I turned over the land to Colonel Wright. I bought it from McCrary and sold the 75 acres to Luke, who sold to Green, and Green or Luke surrendered the land to Wright, who at that time held the title from McCrary. I borrowed money from Jones & Franklin and paid Wright, who made the deed to my wife, Susan F. Underwood. Wright made the deed to the whole tract, including the 75 acres. Colonel Wright took deed from McCrary and gave me bond for title.

With the consent of Wright, I sold the 75 acres to Dan Luke. Wright wrote the deed to my wife like the McCrary deed. We did not know this deed was made like it was. While the land was under mortgage to the loan company, my wife made a deed to Wright to the 75 acres. Wright's tenants were occupying the land in 1890. Mrs. Susan F. Underwood testified: I moved on the Levi McCrary place in 1881; the place contained 300 acres and included the 75 acres in northern part of lot number 63 in the 13th district of Thomas county. The 75-acre tract was conveyed to Dan Luke. I owned and occupied the 75-acre tract on the first day of August, 1890. I held the deeds to the entire 300-acre tract, but the 75 acres on the north side of lot number 63 was conveyed to me by A. P. Wright by mistake. I executed the deed to A. P. Wright to the land in question in 1890. In making the deed to me, he by mistake included in it the 75-acre tract, and my deed to him was made to rectify this mistake. The land described in my deed to Wright covers the land in dispute. On November 1, 1889, I held the deed to the 300 acres, which included the 75-acre tract. I gave a mortgage to the Georgia Loan and Trust Company, covering the land described in the deed from Wright to me, the description being taken from that deed, and by mistake included the 75 acres in controversy. Several witnesses introduced by the defendants testified that the tenants of A. P. Wright had been in possession of the 75-acre tract since 1889. None of these tenants lived on the land, but did cultivate it. The houses in which the tenants lived were located on a two-acre tract of an adjoining lot of land. The possession of Wright and of his executors was open, notorious, and peaceable, and the average rental value of the land was about $17.00 per year. The defendants also introduced the following documentary evidence: (1) Deed from D. T. Luke to A. P. Wright, dated October 18, 1886, conveying 100 acres of lot number 75 in the 13th district of Thomas county; (2) deed from Thomas C. Mitchell to A. P. Wright, dated March 20, 1889, conveying certain described lands, including 75 acres off of lot number 63 in the 13th district of said county; (3) bond for title from A. P. Wright to E. F. Green, obligating the maker to convey the land described in the foregoing deed upon payment of a certain promissory note, the bond being dated October 10, 1886; (4)

mortgage from Susan F. Underwood to the Georgia Loan and Trust Company, dated November 1, 1885, to secure note for $300, and covering "one farm lying in a body, consisting of 225 acres, more or less, in the southeast corner of lot of land number 63, in the 13th district of Thomas county, Georgia;" and (5) deed from Susan F. Underwood to A. P. Wright, made on the 13th day of September, 1890, conveying to him 75 acres of land off the northern portion of lot of land number 63, in the 13th district of Thomas county.     This deed recited that the 75 acres had been conveyed to Susan F. Underwood by mistake.

The court charged the jury as follows: "You look to the evidence in the case; see to whom this land belongs.    You look to the description in the deed; and taking it altogether, if the deed gives the description by metes and bounds and then has a clause,—the same being the property occupied by the grantor in the deed,—look at the description altogether, taking the description as a whole, and ascertaining from the description contained therein was the description given by metes and bounds and was it subsequently described as the land occupied.    Taking the deed as a whole, was the property described in the deed intended to convey the 75 acres in dispute?    Was the possession of the defendant open, notorious, and continuous possession?    Then you should find for the defendant.    The court further charges you . . that possession by tenants is the possession of defendants, and charges that possession by clearings, cultivation, and fencing, or other open and notorious possession, would be sufficient notice to put the plaintiff and the world upon notice.    The law of our State is that possession of the land is notice of whatever right or title the occupant has."    Plaintiff in error excepts to the instruction: "Taking the deed as a whole, was the property described in the deed intended to convey the 75 acres?    Was the possession of the defendant open, notorious, and continuous possession?    Then you should find for the defendant."    Many reasons are given in the exception to this particular instruction why it was erroneous and harmful.    The issue in the case was not what land the grantor in the deed from Wright to Mrs. Underwood intended to convey, but what land was actually conveyed by the deed.    The description of the land in that deed was by metes and bounds, and conveyed to the grantee the whole of the land

included within the description.    It is the duty of the court to construe all unambiguous written instruments affecting the merits of a case, and the jury should have been instructed that this deed conveyed all the land within the metes and bounds named in the deed.    The words in the descriptive clause of the deed, "being the same land owned and occupied by me," occurring immediately after the description of the land by metes and bounds, did not create any ambiguity in the deed.    It was undisputed that Mrs. Underwood had actual possession of at least 225 acres of the land, and that possession would be construed to extend to the limits of her deed.    Civil Code, § 3586, and cases annotated.

The deed from Wright to Mrs. Underwood to the 300 acres was executed under a mistake, both she and the grantor intending the deed to convey only 225 acres and not to include the 75 acres which is now in controversy..    Wright drew the deed and made the mistake by which he included the 75 acres in the description. The deed was duly recorded; and when Mrs. Underwood increased her loan by renewal, the lender had no notice of the mistake in the deed.    The trial judge instructed the jury, however, that possession by tenants is the possession of defendants, and possession by clearings, cultivation, and fencing, or other open and notorious possession, would be sufficient notice to put the plaintiff and the world on notice of the occupant's title.    This instruction was a misapplication of the proposition of law that possession of land is notice of whatever right or title the occupant has in the land.    It will be remembered that the alleged adverse possession was that of the grantor.    The provisions of the Civil Code,. § 3931, can have no application to the case of a party who is endeavoring to avail himself of such possession in the face of his own warranty deed, spread on the record, as against an innocent purchaser for value and without notice.    Such a possession remaining with the grantor and never surrendered is to be deemed to be held under his grantee, and is not adverse to his title.    *Jay* v. *Whelchel*, 78 *Ga.* 789.    It is true that the loan company was chargeable with notice that Wright's tenants were in possession of 75 acres of the land described in the deed.    But when Mrs. Underwood applied to the loan company to lend her an additional $300, offering the entire tract of 300 acres as security, the loan company had the right to rely on the recorded deed from Wright to her and to act

on the faith that, so far as Wright was concerned, her title to the land described in the deed was full and complete. The possession of Wright's tenants could not be notice that Wright's claim was antagonistic to his solemn deed, but rather that his possession was consistent with his deed.    The execution of the deed and placing it upon the public records was a solemn publication to the world that the grantor had conveyed to the grantee the land therein described, and the grantor would be estopped from insisting that one who dealt with his grantee on the faith of the deed must take notice of his possession so as to make inquiry whether or not his deed really spoke the truth.

Mrs. Underwood recognized the mistake made by Wright and sought to remedy it by a reconveyance to him of the excess of land covered by his deed to her.    Before this was done, however, she had executed her security deed to the loan company and had obtained an increase of its loan to her on the faith of her title to the entire tract of land described in the deed to her from Wright. The loan company and its transferee, Anna S. Malette, who became the purchaser at the foreclosure sale, had no notice of any mistake in the deed from Wright to Mrs. Underwood.    The mistake of the parties to a deed can not be rectified to the injury of an innocent third party who has parted with his money or extended credit on the faith of the deed speaking the truth of the transaction between the grantor and the grantee.    Civil Code, § 3976;  *Spinks* v. *Glenn*, 67 *Ga.* 744; *Lee* v. *O'Quin*, 103 *Ga.* 361.    The evidence failed to disclose that the plaintiff was affected by any notice of the mistake in Wright's deed ; and, as the purchaser at the sheriff's sale, she acquired title to the land in dispute as against all persons claiming under Wright who relied on such mistake.    The evidence demanded a finding in favor of the plaintiff, and a new trial is hereby ordered.

*Judgment reversed.    All the Justices concur.*