RIMES *et al. v.* FLOYD.

No. 6922. APRIL 13, 1929.

*M. Price,* for plaintiffs.

BECK, P. J. This case arose upon the filing of a claim by G. C. Floyd for 44 acres of a tract of land consisting of 200 acres, which had been levied upon by a fi. fa. in favor of W. A. Rimes and others. Floyd, the claimant, was one of several tenants in common owning the entire tract of 200 acres. On the 26th day of July, 1916, G. C. Floyd and three others of the tenants in common conveyed by warranty deed the entire tract of 200 acres to R. L. and C. L. Floyd, and the last named grantees on the 7th day of May, 1920, conveyed the 200 acres of land to W. A. Rimes and others, the plaintiffs in fi. fa., to secure a debt. This debt was afterwards reduced to judgment, and the fi. fa. in question here was levied on the land, and G. C. Floyd filed a claim, which makes the issue under consideration. The jury returned a verdict in favor of the claimant, and the plaintiffs in fi. fa. made a motion for a new trial, which was overruled.

The claimant, G. C. Floyd, testified on the trial as follows: "This land in question here, the entire tract, was a portion of my father's estate originally. After my father died we lived on this property two years after his death, and the house burnt down and we moved off and scattered off. In 1916 we made arrangements about this property among ourselves; they all agreed to sell this property in some way or dispose of it, agreed to dispose of it to

R. L. Floyd; that is, the others. I didn't agree to sell my portion of the land at all, I signed a deed to him in order to get a deed to my share of it. I didn't get any consideration for making that deed. I didn't get anything afterwards for making it, only the land. As to the consideration of the deed: after I executed this deed to my brother, I went to work on this place, on this property decided on, and it was a part of the original tract that my father had owned. I went into possession of 44 acres, and this plat here is a correct description of the 44 acres. When I went in possession of it the other heirs knew it. I went to building on it and cleared land and fenced it. I built on it in 1917, and moved there in 1918, in the fall. I took possession of it in 1917, and I am now in possession of it and have been in possession of it ever since then, and my possession has been open and notorious; and the first thing that I was disturbed on in my possession was this here, when this came up, the levy that was made on the land, in 1924. I then filed a claim against the sale, this claim here. I don't know why my claim wasn't tried before now; the claim papers were all lost, and we established them at this term. I say I went in possession and built houses and fenced it. There is a road as the boundary on one side of this part of the land, between the original tract and this that I went in possession of. In 1920 I did not consent for R. L. Floyd and C. L. Floyd to execute on this property a security deed to Rimes and others. I knew they were having transactions with the Messrs. Rimes, but I didn't know just the condition of my papers. I didn't know that boundaries took in my land. I didn't know the papers were standing as it was. This particular land is included in the boundaries given in the levy. Nobody has ever contested my possession of this property. I have fenced about half of it, and I have cultivated not quite half. The other part of the land I used for turpentine and building purposes, and nobody has ever objected to me using it for turpentine purposes. My house on this part of the land is right here, on up here. The reason we made this road the line is because it was a road that led by the old home tract, and I accepted the old home corner. I accepted all on this side of the road. When I went in possession of it I fenced right on this road, fenced the entire way across here, and there was a line established by my fence on the road there. Lester knew of that line, he knew that I accepted that as the line,

we agreed on it; he ought to know it. I put that fence there in 1917 and 1918 and 1919, immediately after I went in possesison."

There is no evidence to show that the plaintiffs in fi. fa. had any knowledge of claim of title in the claimant to the 44 acres of land, which was included in the 200 acre tract, except his possession of a part of the 44 acres. There was other evidence introduced by the claimant corroborating his own evidence. Under this evidence it was error for the court to give in charge to the jury the following instructions: "I charge you that possession of land is notice of whatever right or title the occupant has." While it is provided in the Civil Code, § 4528, that "Possession of land is notice of whatever right or title the occupant has," that rule is not applicable under the facts of this case. The claimant himself testified, as appears from evidence quoted above, "I built on it [the land in question] in 1917 and moved there in 1918, in the fall. I took posesssion of it in 1917, and I am now in possession of it and have been in possesison of it ever since then." He was in possession, consequently, at the time of the execution of the deed by the defendants in fi. fa. to the plaintiffs in fi. fa. In the case of *Malette* v. *Wright,* 120 *Ga.* 735 (48 S. E. 229), it was said: "The trial judge instructed the jury, however, that possession by tenants is the possession of defendants, and possession by clearings, cultivation, and fencing, or other open and notorious possession, would be sufficient notice to put the plaintiff and the world on notice of the occupant's title. This instruction was a misapplication of the proposition of law that possession of land is notice of whatever right or title the occupant has in the land. It will be remembered that the alleged adverse possession was that of the grantor. The provisions of the Civil Code, § 3931 [§ 4528 of the present Code] can have no application to the case of a party who is endeavoring to avail himself of such possession in the face of his own warranty deed, spread on the record, as against an innocent purchaser for value and without notice. Such a possession remaining with the grantor and never surrendered is to be deemed to be held under his grantee, and is not adverse to his title. *Jay* v. *Whelchel,* 78 *Ga.* 789" [3 S. E. 906]. Under that ruling and other cases laying down the same principle, the court erred in giving the charge complained of, and in refusing a new trial. For, while the claimant testified expressly that he went in possession of the land in 1917,

he had gone as a tenant in common with the others in possession of the land before the date of the deed to defendants in fi. fa. in 1916. He and his cotenants went in possession in 1907, the date of his father's death. He said expressly in his testimony, "After my father died, we lived on this property two years after his death, and the house burnt down and we moved off and scattered off." Thus he was in possesion as a cotenant nine years before the execution of the deed to the defendants in fi. fa., and the moving off the land because of the destruction of the dwelling-house in which they lived did not change the possession or right of possession.

It follows from what is said above that the judge erred in giving the charge referred to and in refusing a new trial.

*Judgment reversed. All the Justices concur.*