CHESTNUT *v.* WEEKES, administrator.

702

No. 10588.   June 13, 1935.

*Tye, Thomson & Tye,* for plaintiff in error.

*Paul L. Lindsay,* contra.

GILBERT, Justice. ■ Headnotes 1, (*a*), and (*b*) need no elaboration.

■ It was shown by uncontradicted evidence that R. W. Gay was the son of Mrs. Sarah M. Gay, the grantor, and was in possession of the land at the time Chestnut obtained his deed from Mrs. Baird. Because of that fact it is contended that the possession of the tenant, R. W. Gay, was sufficient to put Chestnut upon inquiry, and that such inquiry would have disclosed the facts alleged in the petition. It will now be considered whether or not notice constitutes a defense under the facts of this case to that part of the suit seeking a cancellation of the deed because of fraud and duress, and, if it does, what effect the above stated facts must have in the case. "Possession of land is notice of whatever right or title the *occupant* has." (Italics ours.) Code of 1933, § 85-408. It is not insisted that the tenant in possession either owned or claimed any interest or title to the land in himself. He was a tenant under an oral contract the duration of which is not clearly shown. He was a stranger to the title. Under the Code section just quoted, those facts can not be held sufficient to put Chestnut upon notice that Mrs. Gay's deed, conveying the land to Mrs. Baird and duly recorded, was invalid or voidable for any reason. It appears that Chestnut did not make inquiry of the tenant; but if he had inquired as to what title the *occupant had,* it would have re-

sulted in the information that he did not claim title of any kind except what is stated above. The possession of the tenant being the possession of the landlord, and the landlord having apparently executed an absolute deed conveying to another, and that deed being recorded, Chestnut would be authorized to assume that, as a matter of law, the possession of the tenant was held under the grantee, Mrs. Baird, and not adversely to the latter's title. *Jay* v. *Whelchel,* 78 *Ga.* 786 (2) (3 S. E. 906); *Malette* v. *Wright,* 120 *Ga.* 735, 741 (48 S. E. 229); *Johnson* v. *Hume,* 163 *Ga.* 867 (137 S. E. 56); *Rimes* v. *Floyd,* 168 *Ga.* 426, 428 (148 S. E. 86). In *Kent* v. *Simpson,* 142 *Ga.* 49 (82 S. E. 440), it was said: "The case of *Malette* v. *Wright,* 120 *Ga.* 735 (48 S. E. 229), stands on its own special facts; and while certain broad language is used in the opinion, the decision will not be so extended as to conflict with the general rule which is well established in this State, as above stated." A like statement was made in *Simpson* v. *Ray,* 180 *Ga.* 395 (178 S. E. 726). Under the facts of the present case the judgment here rendered does not require any extension of the principle laid down in the *Malette* case. Moreover, that case is in harmony with the other cases cited above. Section 85-408, however, is not the only statute on the question of notice. Section 37-116 provides: "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." The question, therefore, is whether or not the possession of the tenant was sufficient notice to Chestnut, under section 85-408 or section 37-116, or both, to require an investigation by the latter, leading to the disclosure of the facts, as alleged in the petition, that Dr. Baird had administered drugs to Mrs. Gay and thus by fraud had induced her to execute the deed to Mrs. Baird. There are two lines of authority on this question. One line is that which is stated above, the Georgia rule. The other is that the possession of the tenant would put Chestnut upon inquiry, not only of what right or title the *tenant* had, but of any other facts competent to show that the title which he was about to purchase from Mrs. Baird was defective or invalid. The line of reasoning is, that, had Chestnut inquired of the tenant, R. W. Gay, as to the basis of his possession, he would have elicited informa-

tion that such possession was held under Mrs. Gay as landlord, and Chestnut, being aware that Mrs. Gay had executed what purported .to be an absolute deed to Mrs. Baird, and the same being of record, would detect an inconsistency; that the tenant could not be holding under Mrs. Gay as landlord while there was an outstanding title on record purporting to convey all of Mrs. Gay's interest to Mrs. Baird. According to this theory and under these circumstances Chestnut would be put on notice of his duty to go further and clear up the apparent inconsistency by learning the facts; such investigation would have taken him immediately to Mrs. Gay, and from her he would have learned that she had either made no such deed as appeared of record, or that, if she had, it was not a valid deed, for the reasons alleged in her petition. If we adopt the course of reasoning last stated, the logical conclusion would be that Code sections 37-116 and 85-408 would apply to the facts of the present case, and that the ignorance of Chestnut was due to negligence, and therefore that he was charged with notice of the defective title of Mrs. Baird and could not acquire any indefeasible title to the property by means of the deed from Mrs. Baird. On this question reference is made to 27 R. C. L. 726, § 490 et seq., and authorities cited in the notes; 20 R. C. L. 352, § 13; 66 C. J. 1164, 1172, §§ 1011, 1019 and cases cited in the notes. However, this State has adopted the rule first stated, as found in *Jay* v. *Whelchel, Malette* v. *Wright, Johnson* v. *Hume,* and *Rimes* v. *Floyd,* supra. Under that rule Chestnut was warranted in assuming, by reason of the recorded deed of Mrs. Gay to Mrs. Baird, that, as to these parties at least, the tenant, R. W. Gay, was holding under Mrs. Baird, and that an inquiry of the tenant would have disclosed only that he was a tenant and claimed no title to the land.

The remaining headnotes need not be elaborated.

*Judgment reversed. Presiding Justice Beck, Justices Atkinson and Gilbert concur in the foregoing rulings. Chief Justice Russell dissents. Justices Bell and Hutcheson are disqualified.*

GILBERT, Justice, concurring specially. In addition to what is said above, I wish to record, for myself, the following: The Code of 1933, § 20-206, provides: "The contract of an insane person, a lunatic or a person non compos mentis, who has never been adjudicated to be insane, or a lunatic, or of unsound mind as pre-

scribed by the Code, is not absolutely void, but only voidable, except that a contract made by such person during a lucid interval is valid without ratification. After the fact that such person is insane, a lunatic, or non compos mentis has been established by a court of competent jurisdiction in this State, and the affairs of such person are vested in a guardian, the power of such person to contract, even though restored to sanity, is entirely gone and such contracts are absolutely void, until the guardianship is dissolved. One may recover for necessaries furnished an insane person, a lunatic, or person non compos mentis upon the same proof as if furnished to infants." The statement in that section that the contract of an insane person who has never been adjudicated to be insane is not void, but only voidable, was justified under previous rulings of this court in *Bunn* v. *Postell*, 107 *Ga.* 490 (33 S. E. 707); *Orr* v. *Equitable Mortgage Co.*, 107 *Ga.* 499 (33 S. E. 708); *McClure Realty & Investment Co.* v. *Eubanks*, 151 *Ga.* 763 (108 S. E. 204); *Wynne* v. *Fisher*, 156 *Ga.* 656, 659 (119 S. E. 605); *Fields* v. *Union Central Life Insurance Co.*, 170 *Ga.* 239 (152 S. E. 237). Mrs. Gay was never adjudicated insane. In fact, there is no suggestion that her mind was impaired other than by drugs administered to her. It is not alleged that her mental incapacity continued even to the time of the trial. In about four months after she called in another physician her deposition was taken, and at the trial it was placed in evidence in her behalf. Her deed is not void. If the facts alleged in her petition be proved, her deed is voidable, and the title of the defendant Chestnut should not be protected if he had notice. Is her deed voidable as against an innocent purchaser for value and without notice? An exhaustive search of the decisions of this court discloses that the law on this subject should be clarified by a review of all cases decided by this court on the subject that are conflicting or seemingly so. In *Warren* v. *Federal Land Bank*, 157 *Ga.* 464 (122 S. E. 40), there had been an adjudication of insanity. Consequently the deed was void and no title passed. In *American Trust & Banking Co.* v. *Boone*, 102 *Ga.* 202 (79 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167), the court treated the contract as void, the adjudication of insanity having been made in another State. In *Bryan* v. *Walton*, 14 *Ga.* 185, a guardian had been appointed, and of course the insane person could not act, and a bona fide purchaser for value

was not protected. In *Brown* v. *Carmichael*, 149 *Ga.* 548 (101 S. E. 124), the petitioner sought to set aside a deed to another, then deceased, making the grantee's administrator and her husband parties, alleging certain facts as showing insanity in the grantor, and praying that the husband, who had succeeded without written title to an interest as an heir, be required to make a deed to the petitioner. The court sustained a general demurrer. This court reversed that judgment, and, notwithstanding that there had been no adjudication of insanity, stated inadvertently in a headnote that the deed of an insane person is "invalid." It had been previously held by full benches, and has been consistently held since, that a deed by an insane person, not adjudicated insane, is not void but only voidable. See cases supra. Consequently the first headnote in that case is not authority in the case of an insane grantor who has not been adjudicated insane. In *Gable* v. *Gable*, 130 *Ga.* 689 (61 S. E. 595), the jury found for the plaintiff in a case where there was conflicting evidence as to notice. In *Taylor* v. *Warren*, 175 *Ga.* 800 (166 S. E. 225), the suit was against the surviving husband and other heirs of the grantee. In a number of cases this court has held that a contract of an insane person may be avoided, but an examination of them discloses that in each case only the right of the immediate grantee was involved. Some of these cases are: *Bunn* v. *Postell, Orr* v. *Equitable Mortgage Co.*, supra; *Boynton* v. *Reese*, 112 *Ga.* 354 (37 S. E. 437); *Woolley* v. *Gaines*, 114 *Ga.* 122 (39 S. E. 892, 88 Am. St. R. 22); *Perry* v. *Reynolds*, 137 *Ga.* 437 (73 S. E. 656); *Wynne* v. *Fisher*, supra; *Joiner* v. *Southern Land Sales Cor.*, 158 *Ga.* 752 (124 S. E. 518); *Autry* v. *Parrish*, 164 *Ga.* 650 (139 S. E. 413); *Fields* v. *Union Central Life Ins. Co.*, supra; *Whiteley* v. *Downs*, 174 *Ga.* 839, (164 S. E. 318); *Jones* v. *Union Central Life Ins. Co.*, 178 *Ga.* 591 (173 S. E. 845). It does not necessarily follow that these cases are authority for avoiding in equity the title of a bona fide purchaser for value and without notice, especially in view of the Code of 1933, § 37-111, which provides: "A bona fide purchaser for value, and without notice of an equity, will not be interfered with by equity." It is true that in *Joiner* v. *Southern Land Sales Cor.*, and in *Jones* v. *Union Central Life Ins. Co.*, supra, headnote 3-*a* of *Warren* v. *Federal Land Bank*, supra, was quoted: "The deed of an insane person, though made without fraud and for an

710

adequate consideration, may be avoided by his heirs, not only as against his immediate grantee but also as against bona fide purchasers for value and without notice of such insanity," but the *Joiner* and *Jones* cases did not involve the rights of bona fide purchasers. The quoted expression, "but also as against bona fide purchasers for value and without notice," was obiter and should not be construed as a binding decision on a point not involved in the cases before the court. In *Warren* v. *Federal Land Bank,* supra, the right of an innocent purchaser was involved, but it was in a case where there had been an adjudication of insanity prior to the execution of the instrument. In *Morris* v. *Mobley,* 171 *Ga.* 224 (5) (155 S. E. 8), this court ruled, all the Justices concurring, that "The contract of an insane person who has not been adjudicated a lunatic by a court of competent jurisdiction is voidable after his death, at the instance of his legal representative," citing cases; and then stated that "The allegation that the defendants 'knew' of the mental incapacity of the grantor was immaterial to the plaintiff's case." The authority cited for the last ruling was *Warren* v. *Federal Land Bank,* 157 *Ga.* 464 (supra), but in so ruling the fact was overlooked that in the cited case there had been an *adjudication* of insanity, whereas in *Morris* v. *Mobley* there had been no adjudication. Therefore the court ruled that the same principles of law applied in both instances, although in the one case the contract was absolutely void and in the other only voidable. A similar ruling was made in *Orr* v. *Equitable Mortgage Co.,* supra. Apparently, in a number of cases, while the point was not directly decided, this court seemed to proceed on the theory that where there had been no adjudication of insanity, the grantee, without notice of the insanity and for value, would be protected. *Cheves-Green Co.* v. *Horton,* 177 *Ga.* 525 (170 S. E. 491); *Stanley* v. *Stanley,* 179 *Ga.* 135 (2) (175 S. E. 496).