RAY, administratrix, *v.* ETHERIDGE *et al.*

No. 14495. APRIL 13, 1943. REHEARING DENIED MAY 8, 1943.

*Pierce Matthews* and *A. E. Wilson,* for plaintiff.

*H. A. Etheridge, A. A. Meyer, Robert L. Avary Jr.,* and *William H. Mewbourne,* for defendants.

ATKINSON, Justice. ■ The first question for decision is whether the deed absolute in form from Ray to Etheridge, executed on July 8, 1915, while the house was under construction, was in fact a security deed. The deed was signed at the request of Etheridge when he informed Ray that it would be impossible to complete the house Etheridge had contracted to build. At the time the deed was executed, Ray, in addition to having previously paid for the vacant lot, and having also paid $200 in cash, still owed Etheridge approximately $1500 on the contract to build the house. Each of the notes Ray gave Etheridge referred to a bond for title that so far as the evidence discloses was never executed. Notwithstanding Etheridge's statement that he would not call it a security deed, the

fact remains he would have been amply protected in the event Ray failed to meet his notes as they matured. While the deed from Ray to Etheridge stated a consideration of $1000, no consideration appears to have been paid, but according to the testimony of Etheridge he wanted the deed so he could borrow money in order to carry out his contract. The evidence as a whole, set forth in the statement of facts, demanded a finding that the deed reconveying the lot from Ray, who remained in possession, to Etheridge, though absolute in form, was in fact a security deed. To hold that the deed, regardless of what it was denominated, was not in fact given to secure a debt, would necessarily mean that Ray after having purchased the lot and giving notes for the building of a house thereon, intended to present the house and lot back to Etheridge as a gift.

This is a case where the facts speak louder than words. What the witness Etheridge construed, or understood the effect of this transaction to be, could not overbalance the facts as demonstrated by the evidence. Six weeks before the execution of this deed, Ray had executed 120 notes amounting to $1500, each of them containing a reference to a bond for title that had been or would be executed. At the time of the execution of this deed Ray in fact owed Etheridge this $1500. After the execution of the deed Etheridge himself procured fire insurance on this property in the name of Ray as the sole owner, for which Ray himself paid. Ray returned this property for ad valorem taxation to the city and county after the execution of this deed for fifteen or twenty years. Etheridge at no time returned the property for ad valorem taxation. Ray and his wife remained in possession after the execution of this deed until the time of his death, a period of approximately nineteen years. These facts are more potent than the interpretation placed by Etheridge upon this transaction, and showed definitely that this deed was executed for the purpose of securing a debt.

■ The uncontradicted evidence shows that on April 1, 1926, while Ray and his wife were in actual possession and occupying the house, Etheridge executed to Simpson a security deed purporting to convey the house and lot as security for a loan; that Simpson made no inquiry of Ray concerning his actual possession; that Ray had fully paid Etheridge, and the latter had no interest whatever in the house and lot on the above date. When this case was before the Supreme Court on the exception to the order overruling

792

Simpson's demurrer, it was held, in effect: Where the owner of land [Ray] executes a deed absolute in form but in fact as security for a debt, and remains in possession of the land, and the grantee [Etheridge] conveys the land to another [Simpson] who has no actual notice of the undisclosed agreement that the deed should operate as a security for debt, and who has made no inquiry of the occupant [Ray], the latter may pay or tender the amount of the debt to the first grantee [Etheridge] and maintain an equitable action against the first grantee and the remote grantee [Simpson] for cancellation of both deeds as clouds upon his title, and to have the title decreed to be in him. The principle is also applicable if the debt has been fully paid. *Simpson* v. *Ray*, 180 *Ga.* 395 (3) (178 S. E. 726). See *Chandler* v. *Georgia Chemical Works*, 182 *Ga.* 419 (185 S. E. 787); *Georgia Chemical Works* v. *Malcolm*, 186 *Ga.* 275 (5) (197 S. E. 763); *Peppers* v. *Peppers*, 194 *Ga.* 10 (20 S. E. 2d, 409). *Stepp* v. *Stepp*, 195 *Ga.* 595 (25 S. E. 2d, 6) was not a case, as here, where the maker remaining in possession had given a deed absolute on its face, but in reality only a deed to secure debt. In that case the insistence was that through inadvertance more land was given in the deed than the grantor intended; and the facts in that case showed that after the making of the deed which the grantor sought to disaffirm, he attorned as tenant to the grantee therein.

Independently of these considerations, and whether on principle this case squares with, or is in conflict with, *Malette* v. *Wright*, 120 *Ga.* 735 (48 S. E. 229), which was discussed in *Stepp* v. *Stepp*, supra, the former ruling in *Simpson* v. *Ray*, supra, established the law of this case.

Counsel for the defendant in error insist that Simpson was subrogated to the rights of Park, citing *Wilkins* v. *Gibson*, 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204), where it was held: "One who advances money to pay off an encumbrance upon realty at the instance either of the owner of the property or the holder of the encumbrance, either upon the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be

subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equities of others would be prejudiced thereby; and to this end equity will set aside a cancellation of such security and revive the same for his benefit." While the court said in the opinion that subrogation might arise where the money was advanced "under an agreement, express or implied, made either with the debtor or creditor," the facts of that case, as indicated in the headnote, and the facts in other cases cited by counsel for the defendant in error, show that the "debtor" and "owner" were one and the same person, whereas in the case under consideration the debtor (Etheridge) had no interest in the house and lot, at the time he purported to agree with Simpson for the latter to be subrogated to the rights of Park. As the debtor in this case had no right or interest in the house and lot, he could not make a contract that would affect Simpson's right to subrogation as against the true owner. Since the evidence fails to show that Simpson was entitled to subrogation, it is not necessary to decide whether Park could have recovered as against Ray.

Applying the rulings announced in *Simpson* v. *Ray,* supra, the evidence demanded a finding in favor of the plaintiff, and the court erred in overruling his motion for a new trial.

*Judgment reversed. All the Justices concur.*